**McMASTER CONSTRUCTION, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**and**

**Webb Brothers Construction of Haskell, Inc., Intervenor–Defendant.**

**No. 91–1269C.**

United States Claims Court.

Aug. 5, 1991.

---

Christopher Solop, Jackson, Miss., for plaintiff. Samuel C. Kelly, of counsel.

Allen D. Bruns, with whom were Asst. Atty. Gen. Stuart M. Gerson and David M. Cohen, Washington, D.C., for defendant.

Lloyd Payton, Muskogee, Okl., for intervenor-defendant.

## OPINION

BRUGGINK, Judge.

This is an action for injunctive relief brought pursuant to 28 U.S.C. § 1491(a) (1988). McMaster Construction, Inc. sues to enjoin the award by the Corps of Engineers to the defendant-intervenor Webb Brothers Construction of Haskell, Inc. ("Webb") of a contract for placement of riprap. McMaster was the apparent low bidder on the sealed bid contract. Webb was the apparent second low bidder. The sole basis of the bid protest is McMaster's challenge to the validity of 48 C.F.R. § 3.104–9(b)(3)(i)(C) (1990) (hereafter, the "responsiveness regulation"). For the reasons which follow, the court declines to enjoin the award to Webb.

## FACTS

On April 12, 1991, the United States Department of the Army, Corps of Engineers, Tulsa District, issued Solicitation No. DACW56–91–B–0050 for embankment riprap repair at Canton Lake, Oklahoma. The solicitation required interested contractors to submit bid packages by 2:00 p.m. on May 14, 1991. One of the requirements set out in the solicitation was the inclusion in bids of a signed Certificate of Procurement Integrity. This certificate was included in Section K of the solicitation, a series of 18 required certifications. Clause 52.203–0008 within that section is the Certificate of Procurement Integrity. Such a certificate is required by section 27 of the Federal Procurement Policy Act Amendments of 1988, Pub.L. No. 100–679, 102 Stat. 4063 (codified at 41 U.S.C. § 423(e) (West Supp. 1991)) (the "Act"). At the bottom of the first page of Section K is the following note: "NOTE: FAILURE TO SIGN CLAUSE 52.203–0008, REQUIREMENT FOR CERTIFICATE OF PROCUREMENT INTEGRITY (NOV 1990) SHALL RENDER THE BID NONRESPONSIVE." Also included in the bid package was a single page checklist captioned, *"CAUTION TO OFFERORS."* The last item on the checklist was the following: "Failure to sign Clause 52.203–0008, Requirement for

Certificate of Procurement Integrity (Nov 1990) shall render the bid nonresponsive."

The particular certification included in the bid package at the Section K certifications was defective in that the first clause of the required first sentence was omitted. The certification also contains a very narrow space for insertion of "SIGNATURE, DATE AND TYPED NAME." There was no solid line or notation to alert bidders where the required information was to be inserted to complete the certificate.

When bids were opened on May 14, 1991, McMaster was determined to be the apparent low bidder with a bid of $1,810,494. Webb was the next low bidder at $1,885,-450. On May 20, 1991, McMaster contacted the Contracting Officer ("CO") to determine when contract award would be made. At that time, McMaster was advised that its bid would probably be rejected as nonresponsive because the Certificate of Procurement Integrity was not signed, although two of the three blanks were filled in. On the following day, McMaster filed a protest with the CO challenging the rejection of its bid as nonresponsive. In addition, plaintiff submitted a second certificate, this time with the signature, name and date space filled in.

In response to its protest, McMaster received notification from the CO by letter dated June 4, 1991, that its bid was rejected as nonresponsive. The letter read in relevant part: "Since [McMaster] failed to furnish the Requirement for Certificate of Procurement Integrity, [McMaster's] bid is considered nonresponsive and cannot be considered for award." On June 12, 1991, Webb, the intervenor, received notification that the bid would be awarded to it.

McMaster protested the rejection of its bid to the CO, and on June 4, 1991, the CO notified McMaster of the rejection of the protest. This action was commenced on July 10, 1991. By agreement, the award to Webb has been postponed pending this court's determination.

## DISCUSSION

The statutory basis for both the disputed regulation, as well as the plaintiff's claim is subsection (e) of the Act, titled, "Certificate and Enforcement Matters." That section provides in part:

(1) A Federal agency may not award a contract for the procurement of property or services to any competing contractor ... unless the officer or employee of such contractor responsible for the ... bid for such contract, ... (A)(i) certifies in writing to the contracting officer responsible for such contract that such officer or employee of the competing contractor has no information concerning a violation or possible violation of subsection (a), (b), (d), or (f) of this section, or applicable implementing regulations, pertaining to such procurement....

(2) A Federal agency may not award a contract for the procurement of property or services ... unless the contracting officer responsible for such procurement (A) certifies in writing to the head of such agency that the contracting officer has no information concerning a violation of subsection (a), (b), (d), or (f) of this section, or applicable implementing regulations, pertaining to such procurement....

41 U.S.C. § 423(e). This section thus does not speak to whether the certification must be submitted with the bid. It merely provides that a contract in excess of $100,000 in value cannot be awarded without the certification.

Congress authorized the Federal Acquisition Regulatory Council to implement the certification requirement, along with other provisions of the Act. 41 U.S.C. § 423(o). After a series of false starts, the implementing regulations went into effect in December, 1990. Federal Acquisition Circular 84–60, 55 Fed.Reg. 36,782 (1990). These regulations are found at 48 C.F.R. Part 3, "Improper Business Practices and Personal Conflicts of Interest." Within § 3.104–9, paragraph (b)(3)(i)(C) states that "Failure of a bidder to submit a signed certificate with its bid renders the bid nonresponsive." Plaintiff charges that this provision is contrary to the Act, and contrary to caselaw dealing with the difference between responsiveness and responsibility factors.

a. *Jurisdiction*

■ Defendant's primary response to the contention that the responsiveness regulation is invalid is that, determination of whether the regulation is invalid is not properly before the court in an injunctive proceeding. To put the Government's position in the stark terms in which it was orally argued, so long as the alleged illegality is uniformly applied to all bidders, the court must enforce the solicitation. Alternatively, it argues that the regulation was a reasonable exercise of the agency's authority to develop implementing regulations.

The parties have presented the court with a problem that does not readily call for a principled result. Defendant is certainly correct that the analytical framework for this court's evaluation of a claim for injunctive relief in this context is the solicitation. The regulation at issue does not give a right to monetary relief. It would be a rare procurement regulation that did. Consequently, if there is a substantive basis for the court to review McMaster's claim, it must arise in contract. And, since by definition, if injunctive relief is sought pursuant to section 1491(a)(3) the contract hoped for has not been consummated, it is apparent that Congress contemplated some other source for the court to draw on in determining whether to grant injunctive relief. To bridge this synapse, this court uses as an analytical construct for evaluating the procurement process an implied promise on the part of the Government to fairly and honestly consider all responsive bids. *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1368 (Fed. Cir.1983); *Keco Indus. Inc. v. United States*, 192 Ct.Cl. 773, 780, 428 F.2d 1233, 1237 (1970).

As a corollary to that analysis, it is well-settled that it is the solicitation as put to the bidders that constitutes the Government's offer. There is a line of cases in this court that has taken this principle to mean that "[t]he implied-in-fact contractual right does not provide a jurisdictional basis for a bidder to challenge the underlying regulations because those regulations came

'into existence before the implied contract and, in fact form[ed] the basis of that contract.'" *Stellacom, Inc. v. United States*, No. 91–1159C, slip op. at 4, 24 Cl.Ct. 213, 215 (1991) (quoting *Ingersoll–Rand Co. v. United States*, 2 Cl.Ct. 373, 376 (1983)); *see also Downtown Copy Center v. United States*, 3 Cl.Ct. 80, 82 (1983); *Quality Furniture Rentals, Inc. v. United States*, 1 Cl.Ct. 136, 139 (1983). Defendant argues from this line of analysis that the validity of the responsiveness regulation is a given. Accordingly, the sole question put to the court by the complaint—is the responsiveness regulation valid?—would have to be answered in the affirmative, at least in this context. Since the validity of the regulation cannot be questioned in this context, then it follows that the bid was properly rejected. Thus argues defendant.

■ The Government's position has the appeal of symmetry and simplicity, but has little else to commend it. Defendant's analysis fails to take account of an at least as well-pedigreed a line of decisions which recognize two bases for reversal of a bid rejection. The first, adverted to above, provides that an injunction is appropriate where the decision of the CO was arbitrary or failed to fairly and honestly consider all responsive bids. The more relevant basis is the alternative one recognized in a series of cases originating in the Court of Appeals for the District of Columbia. *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C.Cir.1973); *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859, 864 (D.C.Cir.1970). Those cases establish that an alternative ground for reversal is proof of a clear and prejudicial violation of an applicable statute or regulation. That basis for review has been adopted by decisions of this court. *See, e.g., Electro-Methods, Inc. v. United States*, 7 Cl.Ct. 755, 762 (1985); *Heli–Jet Corp. v. United States*, 2 Cl.Ct. 613, 616 (1983); *DeMat Air, Inc. v. United States*, 2 Cl.Ct. 197, 202 (1983). In an effort to harmonize these two approaches to the court's jurisdiction, the court in *Essex Electro Eng'rs, Inc. v. United States*, 3 Cl.Ct. 277, 280 n. 3 (1983), *aff'd*, 757 F.2d 247 (Fed.Cir.1985), noted

that one aspect of the implied contract at issue is the CO's implied commitment to exercise discretion consistent with "applicable federal regulations," and by extension, applicable statutes. This was presaged in *Keco Indus. v. United States*, 192 Ct.Cl. at 779, 428 F.2d at 1237, where the court held that violation of applicable regulations was a relevant consideration in determining whether the CO's actions were arbitrary or capricious, even though the provisions at issue were for the benefit of the public at large, and not the individual bidder.

The latter construction on this court's pre-award contract jurisdiction has, in any event, been adopted by the Court of Appeals for the Federal Circuit. In *CACI, Inc. v. United States*, 719 F.2d 1567, 1574 (Fed.Cir.1983), the court pointed out that, in adopting 28 U.S.C. § 1491(a)(3), Congress expected the Claims Court to apply the same analysis theretofore utilized by the Court of Appeals for the District of Columbia:

> The essence of "the Scanwell doctrine," which Congress intended 28 U.S.C. § 1491(a)(3) to make applicable to the Claims Court is that an unsuccessful bidder has standing to challenge a proposed contract award on the ground that in awarding the contract the Government violated statutory and procedural requirements.... To deny CACI standing to litigate this question before the Claims Court would vitiate the jurisdiction Congress gave that court over such suits in the Federal Courts Improvement Act.

It is incorrect to argue, therefore, as the Government does, that the court is obligated to treat as an enforceable element of the solicitation, provisions that are contrary to law.

The peculiarity of the present facts is that, in the more typical situation, the aggrieved bidder would claim that the putative awardee's bid was about to be accepted despite some violation of a regulation or statute. In the present context, for example, if McMaster's bid had been accepted, presumably Webb could have argued that the tentative award would be violative of the regulation, and perhaps the statute. McMaster's claim is different, in that the CO scrupulously applied the regulation to all bidders. Plaintiff's only complaint is that the regulation is fatally inconsistent with the statute.

Defendant suggested during oral argument that McMaster does not have standing in a bid protest action to challenge a regulation as violative of the Act, on the theory that the Act was intended to protect the public, rather than bidders. That criticism breaks down on analysis. As the court held in *CACI*, bidders have a great interest in whether their bids will be rejected based on the asserted proper application of a statute. *Id.* at 1574. As the Court of Claims held in *Alabama Rural Fire Ins. Co. v. United States*, 215 Ct.Cl. 442, 454, 572 F.2d 727, 733 (1978), "[t]his court is bound to strike down illegal contracts no matter how that illegality is proved." More recently, in the context of a bid procurement being considered by the General Services Board of Contract Appeals, the Federal Circuit wrote, "[w]e start with the proposition that the failure of the contracting officer to comply with statutory requirements in making an award renders the contract a nullity." *United States v. Amdahl*, 786 F.2d 387, 392 (Fed.Cir.1986).[1]

In order to frame correctly the Government's position, the court asked during oral argument if the logic of defendant's position meant that, so long as a clearly invalid regulation was applied equally to all bidders, the court would be obligated to reject a bid protest predicated on enforcement of that regulation. Counsel responded that the court would be so obligated. Plainly that cannot be the law. As discussed above, there is ample precedent for the position that violations of law or regulation are a ground for setting aside a procurement. The real substance to defendant's argument here is not that the court cannot

---

1. The board operates under a statute specifically giving it authority to determine whether the challenged agency action violates a statute or regulation. 40 U.S.C. § 759(h)(5)(B) (1988).

This basis of reversal is identical to that recognized by *CACI* to reside in the Claims Court, however. *See* discussion *supra* pp. 682–83. *See also Amdahl,* 786 F.2d at 390 n. 2.

consider plaintiff's claim, but that the statute in question is sufficiently ambiguous about detail that plaintiff cannot establish a claimed violation. Accordingly, the court will consider the merits of plaintiff's claim.

### b. *Merits*

■ It cannot have been arbitrary, capricious, or unfair for the CO to comply with the terms of the solicitation, which included the responsiveness regulation. The CO had no authority to waive matters of responsiveness, *see* 48 C.F.R. § 14.406–3, and the regulations and the bid solicitation make it clear that failure to submit a signed certificate is a matter of responsiveness, and hence uncorrectable. Consequently, the only question before the court is whether the regulation at issue is enforceable. If it is not, then plaintiff contends it was arbitrary, and contrary to caselaw[2] and regulations[3] not to permit the certification to be corrected after bid opening.[4]

The requirement that integrity certifications be submitted with the bid in the case of sealed bid procurements is clearly not mandated by the statute. Plaintiff goes further, however, and contends that the regulation is actually inconsistent with "the express intent" of the Act. But if the intent of the Act was that certificates of integrity could be signed any time up to the point at which the CO accepts the bid and awards the contract, that intent is not expressed in the Act. The Act merely states that the contract cannot be *awarded* unless an officer or authorized employee of the contractor "certifies in writing" to the required representations. The Act does not otherwise speak to when, chronologically, that certification must be accomplished.

Nor is the legislative history clear on the question. McMaster relies on a number of comments in the House Report accompanying the bill. The report recites that "Prior to contract award, the key participants in the procurement must certify that the requirements of the procurement have been followed." H.R. 911, 100th Cong., 2d Sess. 18 (1988). This statement is no more explicit than the statute itself, however. Plaintiff's reference to the recitation that "it is expected that such certification would occur *immediately* prior to the signing of the contract or as part of the contract signing," *id.* at 22–23, refers to the parallel certification by the CO, not to the contractor's certification. *See* 41 U.S.C. § 423(e)(2).

Plaintiff's reliance on another statement in the report requires a brief description of the distinction between negotiated and sealed bid procurements. The report authors note that "[w]ith regard to contractor certification, it is intended that this requirement be made a standard clause in all Government contracts. Thus, when an official or employee of the winning contractor signs a contract, he or she will also be certifying to that company's compliance with the Act." H.R. 911 at 23. As defendant notes, sealed bid procurements result in contracts upon acceptance or award by the CO. It is thus the CO's signature that is the final act consummating a contract. The contractor's final signature comes earlier, however, at the time it signs the offer (in this case, standard form 1442). A negotiated procurement is somewhat different in that there may be frequent contacts, proposals, and counterproposals between the parties. This distinction is recognized

---

**2.** *See, e.g., Albano Cleaners, Inc. v. United States,* 197 Ct.Cl. 450, 455, 455 F.2d 556, 559 (1972); *Prestex Inc. v. United States,* 162 Ct.Cl. 620, 627, 320 F.2d 367, 372 (1963).

**3.** *See* 48 C.F.R. § 14.405 ("Minor Informalities or Irregularities in Bids.").

**4.** Plaintiff has not argued that its President's signature on the bid, or the information filled into two of the three blanks in the certificate constitute a signature. Nor has it argued that the certificate should be ignored as confusingly

drafted. It would in any event be hard pressed to make these arguments. The solicitation and regulation are clear in calling for a signature. There was none. While the certificate was poorly drafted, there were sufficient warnings that McMaster is without excuse in not signing the form. As defendant points out, Terry McMaster had signed a similar, though not identical, certificate only two weeks earlier. Unlike similar actions before the Comptroller General, there was no evidence that there had been large scale confusion by bidders.

in the regulations, which leaves room for signature up to the time of executing the contract. 48 C.F.R. § 3.104–9(b)(3)(ii). The reference in the report to a signature, therefore, at least with respect to the contractor, is more compatible, in the case of sealed bid procurements, to the time the contractor submits its bid.

Other citations to the floor debate and the report are equally imprecise. There is certainly no clear expression of an intent that the contractor be permitted to sign the certificate after submission of a bid.

In these circumstances, the admonition of the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), is apt:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. [Footnote omitted.] If, however, the court determines that Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, [footnote omitted] as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

More recently, the Court has re-emphasized that "[w]hen we find, as we do here, that the legislative history is ambiguous and unenlightening on the matters with respect to which the regulations deal, we customarily defer to the expertise of the agency." *Rust v. Sullivan*, — U.S. —, 111 S.Ct. 1759, 1768, 114 L.Ed.2d 233 (1991). Similarly, in *Pauley v. Bethenergy*

*Mines, Inc.*, — U.S. —, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991), the Court writes that "[j]udicial deference to an agency's interpretation of ambiguous provisions of the statutes it is authorized to implement reflects a sensitivity to the proper roles of the political and judicial branches," particularly when the Act produces a "complex and technical regulatory program." While it is arguable whether the Act itself sets up a complex and technical regulatory program, it is indisputable that it is an overlay on such a system.

The administrative determination to require simultaneous submission of the bid and the certification, as well as the decision to make the timely submission a matter of responsiveness rather than responsibility are therefore entitled to great deference. In assessing whether the administrative interpretation was "reasonable," [5] however, plaintiff offers very little other than the argument, rejected above, that the regulation is contrary to the statute. It does not aid plaintiff's case, for example, to argue that the jurisprudence applicable in the absence of the regulation would lead to a different result. It well might have. The question remains, is the regulation valid? If it is, then it is irrelevant that other, more general regulations, or cases dealing with material deviations from the solicitation might generate a different analysis. Plainly the Government has the right to impose legal, non-arbitrary conditions on a solicitation.

Plaintiff contends that the condition is unreasonable in that a signature on the certification adds nothing to the already-extant statutory obligations imposed on the contractor and to the remedies granted to the Government; that this certification is no different than any one of a number of other certifications which become part of the contract upon the contractor's signature on the bid itself. The short answer to that argument is that the requirement of a written certification prior to contract award is explicit in the Act. The longer answer is

---

**5.** *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 115, 108 S.Ct. 1666, 1671, 100 L.Ed.2d 96 (1988).

that by making the certification part of the contractual obligations, the Government's remedies within the contract are expanded. Resort to administrative remedies, while available, would be separate. *Compare* 41 U.S.C. § 423(g) *with* § 423(h). The Comptroller General has held that the certification requirement of the regulation can legitimately be considered a matter of responsiveness for this reason:

> The certification provisions also prescribe contract remedies—including withholding of profits from payments and terminating errant contractors for default—not otherwise available. Those provisions are materially different from those to which the bidders otherwise are bound; accordingly we find that the certification requirement is a material term of the IFB, and is properly treated as a matter of responsiveness.

*Mid–East Contractors, Inc.*, B–242435, 70 Comp.Gen. ——, 91–1 CPD ¶ 342 [available on WESTLAW, CG database], Lexis 387 (Mar. 29, 1991). *See also Inland Services Corp.*, B–242993 [available on WESTLAW, CG database], Lexis 721 (Comp.Gen. June 25, 1991); *Emjay Eng'g & Constr. Co.*, B–243060 [available on WESTLAW, CG database], Lexis 688 (Comp.Gen. June 21, 1991).

Finally the court notes that it is not unreasonable, in the case of a sealed bid procurement, simply as a matter of administrative convenience, for the agency to require certifications of this gravity to be included with the bid. The Act forbids the award of a contract absent the certification. Consequently, a low bidder who does not sign the certification would have a colorable argument that it could not be forced to perform if it decided its bid was imprudent. It is not unreasonable to foreclose that dilemma. Nor is it unreasonable to desire that the CO be able to execute the contract upon determination of the low bid without the necessity of obtaining further signatures.

The result is admittedly draconian. What may be reasonable and hence not improper in a legal sense may not necessarily be the optimum result. Neither the Government nor Webb contends that

McMaster's error was anything but an oversight; the insistence on a contemporaneous signature has the effect of wasting approximately $75,000 in taxpayer funds in this case; and the regulation could easily have been written differently and still be consistent with the statute. Yet the result is inexorable in view of the regulatory requirement, a condition that was within the power of the Government to impose.

## CONCLUSION

Plaintiff's motion for summary judgment is denied. Defendant's cross motion for summary judgment is granted. The Clerk is directed to dismiss the complaint. No costs.