**AEROLEASE LONG BEACH & Satsuma Investment, Inc., Intervening Plaintiffs,**

v.

**UNITED STATES.**

No. 93–485C.

United States Court of Federal Claims.

Feb. 9, 1994.*

Order on Stay Pending Appeal
March 11, 1994.

Order on Denial of Reconsideration
March 11, 1994.

---

*This Opinion was filed on February 9, 1994, and the two accompanying Orders were filed on March 11, 1994. However, due to a protective order issued on August 23, 1994, publication of the Opinion and Orders was delayed until after the award of the contract, which occurred on April 7, 1994. Therefore, the Opinion and Orders are now issued for publication this date, April 20, 1994.

Timothy H. Power, Walnut Creek, CA, for plaintiff.

Edward A. McConwell, Overland Park, KS, for plaintiff/intervenor.

Geoffrey C. Cook, Washington, DC, with whom was Asst. Atty. Gen., Frank W. Hunger, for defendant.

## OPINION

YOCK, Judge.

This preaward contract action comes before the Court on the plaintiff's motion for summary judgment, the plaintiff/intervenor's motion for summary judgment, and the defendant's cross-motion for summary judgment or, in the alternative, motion to dismiss. Aerolease Long Beach (Aerolease), the plaintiff, and Satsuma Investment, Inc. (Satsuma), the plaintiff/intervenor, seek declaratory judgment and injunctive relief for alleged improprieties in the evaluation and award of a contract solicited by the Federal Aviation Administration (FAA). The plaintiff challenges the exclusion of certain costs from evaluation under the evaluation criteria of the solicitation. The plaintiff/intervenor likewise challenges the exclusion of costs from the evaluation criteria as well as protests the contracting officer's decision to reopen negotiations after the submission of initial best and final offers and the contracting officer's decision to accept the offer of the anticipated awardee after the due date for the submission of initial proposals. The defendant rejects the challenges to the types of costs considered within the evaluation criteria and the reopening of negotiations as within the discretion of the contracting officer. The defendant rebuts the timeliness arguments involving the initial offer of the anticipated awardee by reference to a clause contained in the solicitation from the General Services Administration Regulations (GSAR), a clause which the plaintiff and plaintiff/intervenor claim diverges from the Federal Acquisition Regulation (FAR). Pursuant to late document disclosures by the defendant, the plaintiff and the plaintiff/intervenor (intervenor) also object to the contracting officer's decision to accept a late revised best and final offer (BAFO) from the anticipated awardee. Again, the defendant rejects this timeliness argument based on the same GSAR clause.

Upon consideration of the entire summary judgment record, including oral and documentary evidence, as well as appropriate pre- and post-trial briefings, this Court concludes that all of the parties to this summary judgment proceeding prevail on one or more merit arguments. As for the discretionary decisions of the contracting officer regarding the evaluation criteria, this Court renders summary judgment in favor of the defendant. As for the untimely submission of the initial proposal as well as of the revised best and final offer of the anticipated awardee, however, this Court renders summary judgment in favor of the plaintiff and the intervenor. For these reasons, and as described below, this Court hereby enjoins award of the instant contract to the anticipated awardee, One Airport Plaza. This Court further directs the contracting officer to render a decision on the award of this contract among the remaining offerors in conformity with the requirements of the Solicitation for Offers and as described herein.

### Factual Background

On October 23, 1992, the FAA issued Solicitation for Offers (SFO) DTFA11–93–L–15001 for the lease of 25,000 square feet of net usable office and related use space, with parking for 160 vehicles, at the Long Beach Municipal Airport in Long Beach, California. The FAA required the office and parking space to service the Aircraft Certification Office (ACO) and the Aircraft Evaluation Group (AEG) at the Long Beach Municipal Airport. The initial term of the lease was to be for one year, with Government option to renew for five additional one-year terms.[1]

---

1. Under the preceding lease, both the ACO and AEG had occupied office space owned by Aerolease Long Beach since June 16, 1988, a lease extended until June 16, 1994, as a result of the instant proceedings.

Prior to the issuance of the SFO for the instant procurement, on October 13–14, 1992, the FAA conducted a market survey of office space available surrounding the Long Beach Municipal Airport. In doing so, the FAA located, inspected, and qualified six potential offerors. Although the FAA also publicized the solicitation in the Commerce Business Daily as well as in other newspapers in the Long Beach area, only these six concerns requested and received SFO's on October 23, 1992, the date specified for SFO distribution.

The SFO called for the submission of initial proposals by November 30, 1992. By that date, all six recipients of the SFO submitted an offer.[2] Following the submission of initial offers, the FAA contracting officer conducted and completed negotiations with all six of the offerors on January 5–6, 1993 and requested the submission of best and final offers (BAFO's) by February 8, 1993.

On January 13, 1993, which was forty-four days after the deadline for the submission of initial proposals and seven days after the completion of negotiations and the announcement of the due date for BAFO's, a seventh offeror, One Airport Plaza, submitted an offer for the property located at 4403 Douglas Drive. Pursuant to judicial foreclosure, One Airport Plaza apparently was unable to offer the property for lease at any earlier time. On January 22, 1993, because One Airport Plaza had submitted an offer after the deadline for initial proposals and after the completion of negotiations, the contracting officer initially rejected the offer not only for untimeliness but also for reasons of fairness to the timely offerors and based on the existence of adequate competition. The contracting officer's letter dated January 22, 1993, stated:

We have received your proposal to lease space to the FAA at One Airport Plaza. As you are aware, the original proposals were due by November 30, 1992, and negotiations have already taken place. Best and Final Offers have already been requested.

We will not consider your offer at this time because we already have adequate competition and it would not be fair to the other offerors to reopen negotiations since they are already preparing their best and final proposals. Also, your offer as submitted is not complete and would require a fair amount of time to even bring it close to where the other competitors are in the bid process. This requirement was advertised both in the Commerce Business Daily and the local newspapers and your company had an opportunity at that time to submit an offer; however, for other reasons, you did not submit it.

Letter from Patricia Jensen, Contracting Officer, Real Estate and Utilities Branch, FAA to Kevin Shannon, The Seeley Company (Real Estate Broker for One Airport Plaza) (January 22, 1993). However, when One Airport Plaza threatened to protest the exclusion, the contracting officer agreed to reconsider the decision. After discussions with legal counsel, and based on General Services Administration Regulation (GSAR) 552.270–3(a), 48 C.F.R. § 552.270–3(a) (1992), the contracting officer reversed her decision and allowed the submission of the late offer. Accordingly, the contracting officer completed negotiations with One Airport Plaza on January 27, 1993, and instructed the offeror to submit its BAFO by the February 8, 1993, deadline.

On February 8, 1993, the due date for the first round of BAFO's, the contracting officer received BAFO's from six of the seven original offerors, including Aerolease, Satsuma, and One Airport Plaza. On February 12, 1993, however, the contracting officer again discovered common deficiencies, including the absence of signed certifications and representations by several offerors. Accordingly, the contracting officer reopened negotiations and established a new deadline for BAFO's—4:00 p.m. on February 25, 1993. On February 23, 1993, two days before the new BAFO deadline, One Airport Plaza contacted the contracting officer by telephone and requested an extension of the BAFO due date. The contracting officer refused to ex-

---

2. The six offers recited office and parking space at the following locations: (1) 3229 East Spring, owned by Aerolease; (2) 4900 Paramount; (3) 5000 Spring Street; (4) P.S. Business Center; (5) Wing Business Park; and (6) Wing Office Park, owned by Satsuma.

tend the deadline, reiterating the February 25, 1993, deadline.

On the due date for the second round of BAFO's, February 25, 1993, two offerors submitted best and final offers, Aerolease and Satsuma. One day after the deadline, on February 26, 1993, One Airport Plaza submitted an unsigned BAFO at 3:56 p.m. followed by a signed BAFO at 4:16 p.m. but without certifications or representations. Apparently, due to a typographical error on the part of the Government, One Airport Plaza received written notification of the BAFO due date as February *26*, 1993. Due to this error and based on GSAR 552.270–3(f), the contracting officer accepted the one day late BAFO, even though the contracting officer had provided actual knowledge of the February 25, 1993 deadline by telephone two days prior. Moreover, the contracting officer later discovered that the BAFO submitted by One Airport Plaza contained neither certifications nor representations. Again, upon checking with legal counsel, the contracting officer nevertheless allowed One Airport Plaza to rectify this omission as a minor irregularity. Accordingly, on March 12, 1993, One Airport Plaza submitted the requisite certifications and representations, and the contracting officer determined that One Airport Plaza had submitted a proper BAFO.

Following the submission of these BAFO's, pursuant to the evaluation criteria of the SFO, the contracting officer calculated the net per square foot present value for each offer. As specified in the SFO, this calculation involves the assignment of the costs designated in the SFO to the evaluation criteria. Based on the computation, on June 23, 1993, the FAA announced its intention to award the instant contract to One Airport Plaza.[3] Shortly thereafter, the plaintiff, Aerolease Long Beach, filed the instant prebid declaratory/injunctive action. On September 28, 1993, the plaintiff/intervenor was allowed to intervene.

Aerolease submitted its initial offer on November 16, 1992 and its initial BAFO on February 5, 1993. On February 12, 1993, the contracting officer, Ms. Patricia Jensen, contacted Aerolease and requested clarification as to the amount of the cancellation fee.[4] As the incumbent contractor, Aerolease had previously offered to waive any cancellation fee (up to $75,000) in any offer for an additional term to the lease. Thus, in the absence of a reiteration of this offer in the BAFO, Ms. Jensen sought clarification on the status and amount of the waiver. Despite this clarification, several days before the deadline for revised BAFO's, Ms. Jensen informed Aerolease that the FAA would not consider the cancellation fee as an evaluation criterion in making the award determination. On February 24, 1993, Aerolease submitted its revised BAFO but, in a cover letter, objected to the absence of consideration of the cancellation fee as an evaluation criterion.

On March 30, 1993, based on the dispute over the cancellation costs, Aerolease filed a protest with the FAA. As grounds for the protest, in an apparent change of position, Aerolease argued that the contracting officer misinterpreted the evaluation requirements of the SFO. Indeed, instead of requesting the inclusion of cancellation costs within the evaluation criteria, Aerolease contended that the contracting officer had misinterpreted the evaluation criteria as excluding such costs. On April 8, 1993, however, the FAA denied the protest. In the denial, Ms. Jensen reaffirmed that the cancellation fee would not be considered prior to award pursuant to the terms of the SFO. Furthermore, Ms. Jensen explained that calculation of the cancellation fee required an approximation of the square footage and that no calculation could occur until award and deter-

---

3. Aerolease submitted a net present value of $20.52 per square foot for an annual cost of $514,723, Satsuma submitted a net present value of $16.20 per square foot for an annual cost of $405,000, and One Airport Plaza submitted a net present value of $15.60 per square foot for an annual cost of $390,000. Price Negotiation Memorandum, Abstract of BAFOs (June 23, 1993).

4. The cancellation fee regards the amount expended by the lessor as improvement costs for the Government's use of the property. Termed the "cancellation costs," the costs include the amortized costs that the lessor anticipates over the term of the lease. If the Government terminates the contract early, then the fee constitutes the amortized recovery anticipated by the lessor.

mination of the exact square footage. On April 15, 1993, Aerolease submitted a request for reconsideration, but the FAA denied the request on April 28, 1993. Immediately thereafter, Aerolease filed a protest with the General Accounting Office (GAO) on May 5, 1993, but on May 10, 1993, the GAO dismissed the protest as untimely. On May 21, 1993, Aerolease requested reconsideration, but the GAO affirmed the decision on July 28, 1993.

On August 4, 1993, for the reasons stated above, Aerolease filed its complaint for declaratory judgment and injunctive relief in this Court.

Satsuma submitted its initial offer on November 30, 1992 and its initial BAFO on February 8, 1993. Soon after the submission of its revised BAFO on or before February 25, 1993, however, Satsuma discovered that the contracting officer anticipated evaluation of offers based solely on net per square foot present value allegedly without pricing termination costs, service costs, and overtime charges. As Satsuma proposed no termination fee, in contrast to the $501,960 termination fee of One Airport Plaza, Satsuma sought inclusion of this cost within the evaluation criteria. Also, as Satsuma proposed service costs of $101,404, in contrast to the $123,000 service costs of One Airport Plaza, Satsuma sought inclusion of these costs within the evaluation criteria. Further, as Satsuma proposed $25 per hour in overtime charges, in contrast to the $36.50 per hour rate of One Airport Plaza, Satsuma sought inclusion of these costs within the evaluation criteria as well. Based on the alleged impropriety of the exclusion of these costs from evaluation, on May 21, 1993, Satsuma filed a simultaneous protest both with the FAA and the GAO. On June 4, 1993, the contracting officer denied the administrative protest and, on August 17, 1993, the GAO dismissed the protest because Aerolease had initiated the instant action in this Court.

On September 28, 1993, for the reasons stated above, Satsuma submitted its intervening complaint for declaratory judgment and injunctive relief in this Court.

On September 14, 1993, the plaintiff (Aerolease) submitted a motion for summary judg-ment. As grounds for the motion, the plaintiff again recited the contracting officer's failure to consider cancellation costs within the evaluation criteria. The plaintiff cited this conduct as error based on the Competition in Contracting Act of 1984 (CICA), Pub.L. No. 98–369, 98 Stat. 1175 (codified in part at 10 U.S.C. § 2304 (1988 & Supp. III 1991)), and the Anti–Deficiency Act (ADA), 31 U.S.C. § 1341 (1988). The plaintiff proffers a CICA violation based on the contracting officer's inconsistent positions on the consideration of cancellation costs in the award of the contract. Citing the doctrine of contemporaneous interpretation or shared understanding, the plaintiff argues that the contracting officer, once having considered cancellation costs, cannot later refuse to do so. Further, citing the rule of contract interpretation that parties interpret all parts of a contract as applicable, the plaintiff further argues that the CICA mandates consideration of cancellation costs in the evaluation where the SFO requires the consideration of such costs. The plaintiff also proffers an ADA argument. Specifically, the plaintiff claims an ADA violation based on the contracting officer's stated intention of evaluation of the instant contract based on a six-year term in lieu of evaluation on a one-year term plus contingent options. For these reasons, the plaintiff requested an injunction of award pending resolution of these issues by declaratory judgment and reevaluation of the revised BAFO's pending such judicial determination.

On September 20, 1993, the defendant submitted its opposition to the plaintiff's motion for summary judgment as well as its cross-motion for summary judgment, or in the alternative, motion to dismiss. As an initial matter, the defendant contends that the plaintiff presents an untimely challenge to the terms of the solicitation. Just as the GAO denies any challenge to the terms of a solicitation after the submission of initial offers, the defendant asks this Court to adopt a similar requirement. On the merits of the plaintiff's arguments, the defendant proffers reasonable conduct of the contracting officer with regard to the consideration of cancellation costs. As for violation of the CICA, the defendant argues that the SFO specifically

described the factors for evaluation and that these evaluation criteria precluded cancellation costs. As for violation of the ADA, the defendant contends that the contracting officer properly computed costs based on a presumed automatic exercise of the option periods. For the above reasons, the defendant moved for summary judgment based on the administrative record, or in the alternative, dismissal of the plaintiff's complaint.

On October 26, 1993, Satsuma submitted its motion for summary judgment and its opposition to the defendant's motion for summary judgment. In that motion, the intervenor broadened the scope of review of the contracting officer's decision with the introduction of three additional issues. In addition to the plaintiff's challenge to the consideration of cancellation costs, the intervenor questioned the preclusion of service costs and overtime charges within the evaluation criteria, the extension of best and final offers (BAFO's) from February 8, 1993 to February 25, 1993, following the reopening of negotiations, and the allegedly improper acceptance of the proposal of One Airport Plaza. Thus, the intervenor challenges not only the preclusion of cancellation costs from evaluation but also the preclusion of service costs and overtime charges from evaluation in making the award determination. The intervenor argues that all of these costs require consideration within the evaluation criteria. The intervenor also challenges the reopening of negotiations and extension of BAFO's, arguing that the contracting officer required only clarification, and not the correction of deficiencies, to satisfy the requirements for award. The intervenor further challenges the acceptance of an offer by One Airport Plaza for three reasons. First, citing FAR 15.507, 48 C.F.R. § 15.507 (1992), the intervenor contends that the contracting officer acted contrary to regulation by accepting an "unsolicited offer." Second, citing GSAR 570.203(b), 48 C.F.R. § 570.203(b) (1992) and FAA Order 4420.4, the intervenor contends that the contracting officer acted contrary to regulation by accepting a proposal unresponsive to the simultaneous distribution of offers. Third, citing GSAR 552.270-3(a), 48 C.F.R. § 552.270-3(a) (1992), the intervenor insinuates that the contracting officer's interpretation of the GSAR

contract clause on late submissions contradicts the general timeliness requirements of the FAR. For the above reasons, the intervenor sought an injunction of award to One Airport Plaza and declaratory judgment regarding the other issues proffered for judicial resolution.

On November 1, 1993, the plaintiff (Aerolease) submitted its opposition to the defendant's motion for summary judgment and its reply to the intervenor's motion for summary judgment. As a basic matter, the plaintiff rejected the defendant's timeliness argument, stating that it had protested the provisions in the SFO before the submission of BAFO's. Further, in addition to reiterating the arguments over cancellation costs, the plaintiff also adopted and expanded upon the intervenor's objections to the inclusion of the proposal submitted by One Airport Plaza. Whereas the intervenor only insinuated a contradiction between the FAR and GSAR 552.270-3(a), the plaintiff specifically pointed to an area of alleged divergence. Specifically, as the GSAR also incorporates GSAR 570.207, 48 C.F.R. § 570.207 (1992), which in turn cites FAR 15.412, 48 C.F.R. § 15.412 (1992), the plaintiff demonstrates how the GSAR makes direct reference to a FAR provision which allegedly directly contradicts GSAR 552.270-3(a). As GSAR 552.207 and FAR 15.412 define a late offer one way, and as GSAR 570.207-3(a) defines a late offer another way, the plaintiff proffers that the SFO clause from GSAR 570.207-3(a) contradicts the FAR.

On November 4, 1993, the defendant submitted its opposition to the intervenor's motion for summary judgment. Therein, the defendant responded to the intervenor's numerous arguments. As for the challenges to the types of costs considered by the contracting officer, at least for cancellation costs and overtime charges, the defendant reiterated the same arguments proffered as in the defendant's opposition to the plaintiff's motion for summary judgment. While these costs require consideration generally (i.e., as for reasonableness), the defendant asserts that none of the costs required inclusion within the SFO as evaluation criteria. As for the challenge to service costs, however, the de-

fendant submits that the contracting officer indeed evaluated these costs as required by the SFO. As for the reopening of negotiations and call for a second round of BAFO's, the defendant contends that the contracting officer acted entirely within her discretion. The contracting officer considered the BAFO's insufficient for award and accordingly reopened negotiations and set a date for revised BAFO's. As such, the defendant submits that the contracting officer acted in accordance with all applicable regulations. As for the acceptance of the proposal of One Airport Plaza, the defendant responds to the three arguments presented by the intervenor. First, the defendant contends that the intervenor misinterprets FAR 15.507, as describing the proposal of One Airport Plaza as an "unsolicited proposal." Because the proposal responded to the SFO, the defendant rejects the classification of the proposal as "unsolicited." Second, the defendant contends that the intervenor misconstrues GSAR 570.203(b) as prohibiting the further distribution of SFO's after the date for distribution. Citing GSAR 570.203(c), which provides for the maintenance of extra copies at the office of the contracting officer, the defendant notes that the regulation for simultaneous distribution acts only to prohibit precedent and not subsequent distribution. Third, without further explanation, the defendant simply recites GSAR 552.270–3(a) as authority for acceptance of the One Airport Plaza offer after the deadline for initial offers but before the deadline for BAFO's. Finally, as a defense to all of the intervenor's arguments, the defendant contends that no prejudice occurred to either disappointed offeror. Accordingly, the plaintiff reiterated its motion for summary judgment, or in the alternative, dismissal of the plaintiff's and intervenor's complaints.

On November 22, 1993, the plaintiff/intervenor submitted its reply to the defendant's opposition to its motion for summary judgment and its opposition to the defendant's cross-motion for summary judgment. In this reply, the intervenor essentially repeated the same allegations contained in its original motion for summary judgment. As for the challenges to the types of costs considered by the contracting officer, the intervenor reiterated the position that cancellation costs and overtime charges require consideration not merely generally but within the evaluation criteria of the SFO. As for service costs, the intervenor disputed the defendant's contention that the contracting officer evaluated these costs, particularly for Satsuma's offer. As for the reopening of negotiations and renewed request for BAFO's, the intervenor reiterated its allegations of impropriety, supplemented with a new allegation of insufficient findings of fact to support the contracting officer's decision. As for the acceptance of the proposal of One Airport Plaza, the intervenor also reiterated the same three arguments that the contracting officer improperly accepted an unsolicited proposal, improperly distributed an offer after the common date for the release of offers, and improperly accepted an offer after the deadline for submission of initial proposals. Further, as rebuttal of the defendant's claim of lack of prejudice, the intervenor pointed out that the defendant provided no legal basis for such a requirement.

On December 13, 1993, the defendant submitted its reply to the plaintiff's response. Again, the defendant contended that the plaintiff had presented an untimely challenge to the provisions of the SFO. In response to the plaintiff's arguments that it had objected telephonically to the SFO pricing scheme, the defendant noted that the plaintiff had only submitted a protest to the contracting officer before the completion of the evaluation, not before the deadline for initial proposals, initial BAFO's, or revised BAFO's. Pointing to the protest procedure of the GAO, the defendant asks that the Court require the submission of such protests before the deadline for the submission of initial proposals. As for the plaintiff's challenges to the evaluation of price, the defendant directs attention to the evaluation clause of the SFO. As the clause maintains no provision for the evaluation of cancellation costs, the defendant contends that the contracting officer acted properly. Finally, as for the plaintiff's adopted argument that the contracting officer improperly accepted the offer of One Airport Plaza, and specifically the plaintiff's argument that GSAR 552.207–3(a) diverges from the FAR,

the defendant contends that the plaintiff proffers a circular argument to discredit GSAR 552.270–3(a). Whereas the FAR provision to which the plaintiff refers facially diverges from the GSAR clause, as described later in this Opinion, the defendant fails to explain the circular nature of the argument.

On December 13, 1993, the defendant also submitted its reply to the intervenor's response. In addition to responding to common arguments made by both the plaintiff and the intervenor in the above reply to the plaintiff, the defendant made several additional points with regard to the intervenor's briefings. As for the cancellation costs and overtime charges, the defendant distinguished between consideration as an evaluation criterion, a factor not calculated by the contracting officer, and consideration for reasonableness, a factor computed by the contracting officer. Citing the SFO, the defendant contends that the contracting officer made a proper distinction between the two means of consideration for both types of costs. Moreover, as for the overtime charges, although referenced as a contingency in the SFO, the defendant contends that the SFO nowhere requires that the contracting officer consider these costs either within the evaluation criteria or for reasonableness. As for the service costs, although a required component of the evaluation criteria pursuant to the SFO, by citation to the contracting officer's worksheets, the defendant demonstrates inclusion of these costs within the net per square foot present value for each offeror. Finally, as for the intervenor's argument that the contracting officer improperly accepted the offer of One Airport Plaza, and resultingly that all offerors incurred the 120–day offer requirement, except the anticipated awardee, the defendant rebuts that the SFO states no preclusion for withdrawal or cancellation of the offer. As for the other arguments regarding the offer of One Airport Plaza, the defendant merely reiterates the same arguments as in the initial motion for summary judgment, or in the alternative, to dismiss.

On January 6–7, 1994, an oral hearing was held. At the hearing, the Government submitted Ms. Patricia Jensen, the contracting officer for the procurement at issue. Under the direct examination of the defendant and the cross-examination of the plaintiff and the plaintiff/intervenor, Ms. Jensen described the negotiated procurement process surrounding the SFO for the FAA lease and the matters of dispute as alleged by the protesting parties. On the whole, Ms. Jensen demonstrated efforts corresponding with this Court's understanding of an efficient and reasoned contracting officer. Nevertheless, primarily because of action taken upon the legal advice of the legal staff at FAA, Ms. Jensen made various decisions which threatened the validity of the instant procurement, which this Court considers in the Discussion portion of this Opinion.

 Following the hearing, on January 19, 1994, the parties submitted simultaneous post-hearing briefs consistent with the expedited nature of these declaratory/injunctive actions. The defendant submitted a brief defending all of the issues raised by the protesting parties throughout the briefings as well as the new issues raised at the hearing. In addition, the defendant reiterated its request for summary judgment, or in the alternative, dismissal of the action, but in the event of a contrary ruling, the defendant requested resolicitation in lieu of any judicial direction to the contracting officer. In contrast, the plaintiff and the intervenor (in a joint brief) limited the scope of their brief to the two primary issues discussed at the hearing: the inclusion or exclusion of certain costs from the evaluation criteria and the inclusion or exclusion of the alleged late offer as well as the late and defective revised BAFO submitted by One Airport Plaza. In addition to the merit arguments, the protesting parties also reexamined their requests for relief. Whereas both parties had originally requested reevaluation of the revised BAFO's as well as the exclusion of One Airport Plaza from the procurement, the parties recited conflicting remedies: upon a finding by the Court of improper conduct by the contracting officer, the intervenor reiterated the earlier prayer for relief, but the plaintiff amended its prayer in favor of resolicitation. Based on the above, this Court limits the

analysis in this Opinion to the primary issues raised in the post-hearing briefs.[5]

## Discussion

Under the Federal Courts Improvement Act of 1982 (FCIA), Pub.L. No. 97–164, 96 Stat. 25 (1982), the United States Claims Court obtained jurisdictional authority to issue injunctive relief and declaratory judgments in preaward contract actions. 28 U.S.C. § 1491(a)(3) (1988). By congressional intent, this jurisdiction mirrored the pre-award contract (bid protest) jurisdiction of the United States district courts. *Sterling-wear of Boston, Inc. v. United States*, 11 Cl.Ct. 517, 521 (1987). Pursuant to the language of the statute, moreover, the United States Court of Appeals for the Federal Circuit as well as the Claims Court has limited jurisdiction to contract actions filed before award. *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1372 (Fed.Cir.1983). Following passage of the Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub.L. No. 102–572, 106 Stat. 4516 (1992), which, among other things, renamed the Claims Court the United States Court of Federal Claims, the Court has continued the same jurisdictional requirements for preaward contract proceedings.

The FCIA describes the preaward contract jurisdiction of the Court of Federal Claims as follows:

> To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief.

28 U.S.C. § 1491(a)(3). As this jurisdictional grant refers to "any contract claim," this Court has recognized an implied-in-fact contract theory on which declaratory and injunctive authority rests. *Big Bud Tractors, Inc. v. United States*, 2 Cl.Ct. 188, 193 (1983). This Court has further defined this implied-in-fact contract as encompassing an implied contract on the part of the Government to fairly and honestly consider bids and proposals pursuant to an invitation for bids or solicitation for offers. *New America Shipbuilders, Inc. v. United States*, 871 F.2d 1077, 1079 (Fed.Cir.1989); *NKF Eng'g. Inc. v. United States*, 805 F.2d 372, 375–76 (Fed.Cir. 1986); *Data Transformation Corp. v. United States*, 13 Cl.Ct. 165, 171 (1987); *Harris Sys. Int'l, Inc. v. United States*, 5 Cl.Ct. 253, 260 (1984). This implied contract theory mirrors the implied duty recognized by the United States Court of Claims by which the Government must fairly and honestly consider all bids and proposals. *Keco Indus., Inc. v. United States*, 192 Ct.Cl. 773, 781–84, 428 F.2d 1233, 1238–40 (1970).

Based on the foregoing, this Court considers the instant bid protest, but, as an matter of first order, this Court must ascertain the

---

**5.** The other primary issue raised by the intervenor during the initial briefings but not discussed in the post-hearing briefing involved the propriety of the contracting officer's reopening of negotiations and extension of the due date for BAFO's. The intervenor contended that the contracting officer had improperly reopened negotiations where only clarifications, and not deficiencies, remained among the initial offers. Indeed, the intervenor successfully demonstrated this point at the oral hearing. In the letter dated January 7, 1993, calling for BAFO's, the contracting officer cited the lack of on-site parking as the only deficiency in Satsuma's offer. Letter from Patricia Jensen, Contracting Officer, Real Estate and Utilities Branch, FAA, to Greg Kirkpatrick, CB Commercial Real Estate Group, Inc. (Real Estate Broker for Satsuma) (January 7, 1993). Yet, as admitted at the oral hearing, by "oversight," the SFO maintained no on-site parking requirement. Thus, as adduced at the hearing, the contracting officer expressed no grounds

to render Satsuma's BAFO deficient. Nevertheless, as this Court grants the intervenor's request for relief for other reasons, under these limited circumstances, this Court declines to base this decision on this highly discretionary aspect of the contracting officer's responsibilities. *See generally* FAR 15.611, 48 C.F.R. § 15.611 (1992). Furthermore, as the contracting officer cited apparent valid deficiencies in the other offers, the contracting officer acted properly because only one offer need require correction of a deficiency for the reopening of negotiations. *See generally* John Cibinic, Jr., *Nonconforming Proposals: Dump or Discuss?*, 3 Nash & Cibinic Rep. ¶ 2 (1989). Finally, because the intervenor choose to participate in the second round of BAFO's in lieu of initiating an appeal, this Court finds that the intervenor waived any right to challenge this contracting officer's decision. *Airco, Inc. v. Energy Research & Dev. Admin.*, 528 F.2d 1294, 1300 (7th Cir.1975).

propriety of summary judgment for the instant dispute.

## I. Summary Judgment

Summary judgment is appropriate only when a court determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. RCFC 56(c). Thus, summary judgment is appropriate here if the Government carries the burden of showing that (1) there is no genuine issue of material fact and (2) it is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

When making a summary judgment determination, a court first discovers the existence of a genuine issue as to any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). While the movant bears the initial burden of showing the absence of all genuine issues of material fact, *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 622 n. 18, 93 S.Ct. 2469, 2479 n. 18, 37 L.Ed.2d 207 (1973), the burden on the moving party may be discharged by showing either the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the movant discharges this burden, the burden falls on the nonmovant to demonstrate specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). However, as the parties in the instant dispute seek cross-motions for summary judgment, this Court finds an absence of any dispute over matters of material fact by implied stipulation where neither party challenges such. *McLain Plumbing & Elec. Serv., Inc. v. United States*, 30 Fed.Cl. 70, 77–78 (1993); *Messerschmidt v. United States*, 29 Fed.Cl. 1, 14–15 (1993). Thus, under these factual circumstances, this Court generally finds no issue of material fact where all parties have filed dispositive motions. As inferred above, however, this Court required additional fact finding to determine whether to render judgment on the motions.

■ In its briefs, however, the defendant challenged this Court's authority to engage in additional fact finding for a summary judgment review of an agency action. The defendant argued that, in reviewing an agency decision, this Court may only consider the administrative record. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743, 105 S.Ct. 1598, 1606, 84 L.Ed.2d 643 (1985) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.") (quoting *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973)). Indeed, the defendant cited three "explicit" precedents for its position. *See, e.g., Foote Mineral Co. v. United States*, 228 Ct.Cl. 230, 654 F.2d 81 (1981); *Black Butte Coal Co. v. United States*, 27 Fed.Cl. 699 (1993); *Marathon Oil Co. v. United States*, 17 Cl.Ct. 116 (1989). The administrative record to which the United States Supreme Court refers in *Florida Power & Light*, however, presupposes an agency decision entailing adjudicatory agency action with adequate fact finding, that is, a due process hearing. *See Florida Power & Light Co.*, 470 U.S. at 743–44, 105 S.Ct. at 1606–07 ("The task of the reviewing court is to apply the appropriate * * * standard of review * * * to the agency decision based on the record the agency presents to the reviewing court.") (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). The precedent of this Court and its predecessors as cited by the defendant, however, all regard *an agency decision*. Indeed, *Foote Mineral* considered a decision of the Department of the Interior Board of Land Appeals, *Black Butte Coal* also considered a decision of the Department of the Interior Board of Land Appeals, and *Marathon Oil*, considered a decision of the Minerals Management Service, as approved by the Assistant Secretary of the Interior for Land and Minerals Management. *Foote Mineral*, 228 Ct.Cl. at 231, 654 F.2d at 83; *Black Butte Coal*, 27 Fed.Cl. at 703; *Marathon Oil*, 17 Cl.Ct. at 117. *See also Hedman v. United States*, 15 Cl.Ct. 304, 320 (1988) (considering a decision of the Department of

Agriculture). To the contrary, the mere decision of a contracting officer constitutes neither an adjudicatory agency action nor adequate fact finding, thus not an agency decision for due process purposes. Therefore, this Court recognizes no limitation of review to the administrative record in a summary judgment proceeding of this nature.

■ Despite the protestations of the defendant, the defendant as well as the protesting parties mutually agreed to the supplementation of the record by the oral testimony of the contracting officer. Based thereon, this Court determined that only legal and no factual issues required resolution. Thus, where "neither [party] has challenged nor denied the material facts relied upon by the other, the trial court may properly enter judgment on the issue of law, based upon the material facts contained in the motions." *Heinemann v. United States*, 796 F.2d 451, 456 (Fed.Cir.1986), *cert. denied*, 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 758 (1987). Accordingly, this Court finds no genuine issue of material fact.

When making a summary judgment determination, however, a court must also consider whether the movant is entitled to a judgment as a matter of law. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. Before rendering a decision on the law, however, this Court reviews the standards and burdens required in a bid protest proceeding.

## II. Standard of Review and Burden of Proof In Bid Protests

Under the FCIA, Congress set forth an uncertain standard of review for bid protests. The Senate contemplated an "arbitrary and capricious" standard while the House anticipated a standard of "truly extraordinary circumstances." S.Rep. No. 97–275, 97th Cong., 1st Sess. 23, *reprinted in* 1982 U.S.C.C.A.N. 11, 33; H.R.Rep. No. 97–312, 97th Cong., 1st Sess. 43 (1981). Despite these contradictory standards, the conference reports unanimously agreed to maintain the current state of the law in the area of bid protests. S.Rep. No. 97–275, 97th Cong., 1st Sess., p. 23; H.R.Rep. No. 97–312, 97th Cong., 1st Sess., p. 43–44. As the reports specifically mentioned the continuity of the standard set

forth in *Scanwell Lab., Inc. v. Shaffer*, 424 F.2d 859, 874 (D.C.Cir.1970), the United States Court of Federal Claims, as well as its predecessor courts, have approved application of that standard. *Harris Data Communications, Inc. v. United States*, 2 Cl.Ct. 229, 236–38 (1983); *John C. Grimberg Co. v. United States*, 1 Cl.Ct. 253, 255 (1982), *aff'd*, 702 F.2d 1362 (Fed.Cir.1983). *See generally* David V. Anthony & Gregory A. Smith, *The Federal Court Improvement Act of 1982: Its Impact on the Resolution of Federal Contract Disputes*, 13 Pub.Contract L.J. 201, 205–06 (1982).

■ Under the general standard of agency review in *Scanwell Lab.*, the district courts consider whether the agency action constitutes arbitrary or capricious conduct, an abuse of discretion, or an otherwise violation of an applicable statute or regulation, *Scanwell Lab.*, 424 F.2d at 874, or as amended by *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C.Cir.1971), whether any reasonable basis exists for the agency decision. In one of the first Claims Court decisions to apply this standard, in *Baird Corp. v. United States*, 1 Cl.Ct. 662, 664–65 (1983), however, the Claims Court only recited the *Steinthal* standard of a "rational or reasonable basis." Subsequently, many decisions in the Claims Court and its successor, as well as in the Court of Appeals for the Federal Circuit, have reviewed agency conduct by a rational and reasonable standard of review. *SMS Data Prods. Group, Inc. v. United States*, 853 F.2d 1547, 1553 (Fed.Cir.1988); *Isratex, Inc. v. United States*, 25 Cl.Ct. 223, 227 (1992); *Thomas Creek Lumber & Log Co. v. United States*, 22 Cl.Ct. 559, 566 (1991); *PNM Constr., Inc. v. United States*, 13 Cl.Ct. 745, 748 (1987); *F. Alderete General Contractors, Inc. v. United States*, 4 Cl.Ct. 482, 492 (1984).

■ Despite the frequent singular use of the *Steinthal* terminology, this Court has applied the rational and reasonable standard not strictly as a test of reasonable conduct but as corresponding to a standard of review by arbitrary and capricious conduct. *Health Sys. Marketing & Dev. Corp. v. United States*, 26 Cl.Ct. 1322, 1326 (1992); *Howell*

*Constr., Inc. v. United States,* 12 Cl.Ct. 450, 452 (1987); *International Graphics v. United States,* 4 Cl.Ct. 186, 193 (1983); *AABCO, Inc. v. United States,* 3 Cl.Ct. 109, 113 (1983). *See* PETER S. LATHAM, GOVERNMENT CONTRACT DISPUTES 21–27 (2d ed. 1986) ("[A] lack of rational basis is synonymous with arbitrary and capricious conduct * * *."). *But see Essex Electro Eng'rs, Inc. v. United States,* 3 Cl.Ct. 277, 280 (1983) ("This standard is more restrictive than upholding administrative action unless arbitrary or capricious.") As defined by *Keco Indus., Inc. v. United States,* 203 Ct.Cl. 566, 492 F.2d 1200 (1974), the arbitrary and capricious standard entails four categories of improper Government action:

> One is that subjective bad faith on the part of the procuring officials, depriving a bidder of the fair and honest consideration of his proposal, normally warrants recovery of bid preparation costs. A second is that proof that there was "no reasonable basis" for the administrative decision will also suffice at least in many situations. The third is that the degree of proof of error necessary for recovery is ordinarily related to the amount of discretion entrusted to the procurement officials by applicable statutes and regulations. The fourth is that proven violation of pertinent statutes or regulations can, but need not necessarily, be a ground for recovery.

*Id.* at 574, 492 F.2d at 1203–04 (citations omitted). *See, e.g., Magnavox Elec. Sys. Co. v. United States,* 26 Cl.Ct. 1373, 1380–81 (1992). Therefore, whether termed the arbitrary and capricious standard per *Scanwell* or the rational and reasonable standard per *Steinthal,* the arbitrary and capricious standard of *Keco* controls for the review of agency action in the Court of Federal Claims.

Under this standard, this Court has long recognized great deference to the decisions of the contracting officer. *Shields Enters., Inc. v. United States,* 28 Fed.Cl. 615, 622 (1993). *See M. Steinthal & Co.,* 455 F.2d at 1301 ("If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and

application of the procurement regulations."). Moreover, in negotiated procurements, this Court has recognized an even greater level of deference to the contracting officer. *DLM & A, Inc. v. United States,* 6 Cl.Ct. 329, 331 (1984); *DeMat Air, Inc. v. United States,* 2 Cl.Ct. 197, 202 (1983); *Big Bud Tractors,* 2 Cl.Ct. at 192–93. Such deference extends to the evaluation of bids and proposals as well as the interpretation of procurement regulations. *Refine Constr. Co. v. United States,* 12 Cl.Ct. 56, 64 (1987). Accordingly, in the instant case, this Court considers the actions of the FAA contracting officer in applying the above noted standard of review and considering both the level and scope of such discretion.

Similar to the standard of review, the burden of proof required of a bid protest proceeding inspires additional uncertainties. Pursuant to *Baird Corp.,* 1 Cl.Ct. at 664, the majority of judges of the Court of Federal Claims, and its predecessor courts, have applied a clear and convincing standard of review. *Bean Dredging Corp. v. United States,* 22 Cl.Ct. 519, 552 (1991); *Blount, Inc. v. United States,* 22 Cl.Ct. 221, 227 (1990); *Metric Sys. Corp. v. United States,* 13 Cl.Ct. 504, 505 (1987); *Data Transformation Corp. v. United States,* 13 Cl.Ct. 165, 172 (1987); *Isometrics, Inc. v. United States,* 11 Cl.Ct. 346, 349 (1986); *Electro–Methods, Inc. v. United States,* 7 Cl.Ct. 755, 762 (1985); *see, e.g., Durable Metals Prods. v. United States,* 27 Fed.Cl. 472, 479, *aff'd,* No. 93–5090, 1993 WL 410294, 1993 U.S.App. LEXIS 27,119 (Fed.Cir. Oct. 15, 1993); *Compliance Corp. v. United States,* 22 Cl.Ct. 193, 198 (1990), *aff'd,* 960 F.2d 157 (Fed.Cir.1992); *CACI Field Servs., Inc. v. United States,* 13 Cl.Ct. 718, 725 (1987), *aff'd,* 854 F.2d 464 (Fed.Cir.1988). On the other hand, at least since 1984, a number of judges have rejected this heavy burden in favor of the lesser burden of a preponderance of the evidence. *Health Sys. Marketing,* 26 Cl.Ct. at 1326; *Isratex,* 25 Cl.Ct. at 227; *Logicon, Inc. v. United States,* 22 Cl.Ct. 776, 787 (1991); *Quality Transp. Servs., Inc. v. United States,* 12 Cl.Ct. 276, 281 (1987); *DLM & A,* 6 Cl.Ct. at 331. While this Court finds the reasoning for the lesser standard appealing, the instant case presents no factual basis for this Court to

reconsider its previous recitation of the burden of proof. *See AABCO,* 3 Cl.Ct. at 113 ("When injunctive relief is sought, because it is a drastic remedy, the bidder must establish its right to such relief by clear and convincing evidence.").

Accordingly, applying the standard and burden as described above, this Court considers the legal arguments presented herein.

### III. Analysis of the Instant Negotiated Procurement

Based on the facts known by the protesting parties prior to the hearing, the plaintiff and the intervenor presented two bases for enjoining award to the anticipated awardee: first, the contracting officer failed to consider certain costs in contradiction to the express requirements of the SFO, and second, the contracting officer improperly accepted the initial proposal of One Airport Plaza. In addition, based on documents submitted to the protesting parties three days before the hearing, the plaintiff and the intervenor have also contended that the contracting officer improperly accepted the revised BAFO's of One Airport Plaza. This Court considers these arguments seriatim.

#### 1. Evaluation pursuant to the Evaluation Criteria

As the initial basis for this bid protest, the plaintiff recited the alleged failure of the contracting officer to consider cancellation costs in evaluating the BAFO's under the terms of the SFO. Upon joining the action, the intervenor recited the same claim, also claiming that the contracting officer had failed to consider service costs and overtime charges. In subsequent briefings, the plaintiff joined the intervenor's challenge to overtime charges but not to service costs.

The plaintiff and the intervenor claim that the contracting officer failed to consider cancellation costs as within the evaluation criteria in making the award of the instant contract. As noted earlier, the parties' references to "cancellation costs" include the costs reimbursable to the contractor by the Government upon early termination of the lease for the unamortized balance of improvement costs; improvement costs, in turn, regard the cost of build out items (out-of-pocket expenses) expended by the lessor in conforming the building to the Government specifications. The dispute over these cancellation costs involves section A, clause 4 of the SFO, which describes the requirements for "Termination and Liquidation." The provision states:

> This lease is for a one year period with renewals as specified under Item 3 "Term". [sic] The Government will reimburse the lessor, on a prorated basis, for build out items (out of pocket costs) identified *and agreed upon prior to award,* if the Government elects to not renew this lease. The reimbursement period will be for five (5) full years from the effective date of the lease. Effective date of lease is deemed to be the date of full beneficial occupancy.

SFO, § A, cl. 4, at 4–5 (emphasis added). Even if no error results from the contracting officer's preclusion of cancellation costs from the evaluation criteria, the protesting parties further challenge the contracting officer's failure to "agree[ ] upon [cancellation costs] prior to award." The parties insinuate that the contracting officer contemplates agreement on price for cancellation costs after the announcement of award and thus intends to conduct improper post-award negotiations.

In addition to cancellation costs, the intervenor (but not the plaintiff) also claims that the contracting officer failed to consider service costs within the evaluation criteria in making award of the instant contract. As recited in the SFO, service costs refer to the costs to operate a building, thus operating costs. Section C, clause 2 of the SFO describes "Operating Costs" as follows:

> [T]he Government shall pay adjusted rent for changes in costs for cleaning services, supplies, materials, maintenance trash removal, landscaping, water, sewer charges, heating, electricity, and certain administrative expenses attributable to occupancy. Applicable costs listed on GSA Form 1217, Lessor's Annual Cost Statement, when negotiated and agreed upon, will be used to determine the base rate for operating costs adjustment.

SFO, § C, cl. 2(A), at 13. Even if the contracting officer properly considered these costs, the intervenor further claims that the contracting officer failed to adjust its offer by the cost of living index as required by section C, clause 2(C–E) of the SFO. *See* SFO, § C, cl. 2(C), at 13 ("If the Government exercises an option to extend the lease term at the same rate as that of the original term, the option price will be based on the adjustment during the original term. Annual adjustments will continue.").

In addition to cancellation costs and service costs, the plaintiff and the intervenor claim that the contracting officer failed to consider the overtime charges as within the evaluation criteria in making the award of the instant contract. The dispute over these charges involves section G, clause 2 of the SFO, which describes the requirements for "Overtime Usage." The provision states:

(A) The Government shall have access to the leased space at all times, including the use of elevators, toilets, lights, and small business machines without additional payment.

(B) If heating or cooling is required on an overtime basis, such services will be ordered orally or in writing by the contracting officer.

(C) All orders are subject to the terms and conditions of this lease. In the event of a conflict between an order and this lease, the lease shall control.

SFO, § G, cl. 2, at 38. The plaintiff and the intervenor claim that the contracting officer wholly ignored the contingency of these costs by failing to even consider the reasonableness of the costs in reviewing the offers for award.

■ The defendant initially seeks to rebuff the challenges to the contracting officer's methodology of price evaluation based strictly on the untimeliness of the challenges to the terms of the SFO. As the evaluation criteria contain no reference to the costs proffered by the protesting parties for consideration (at least for cancellation costs and overtime charges), the defendant contends that the plaintiff and the intervenor maintain challenges to the terms of the SFO as improper. If so, the defendant explains, the

parties' objections come before the Court on an untimely basis: "To be timely, any objection to the terms of the [solicitation] itself should have been raised prior to the closing date for receipt of proposals." *Saxon Export,* B–253441, 93–2 CPD ¶ 130, at 4. In short, the defendant asks this Court to apply the requirements of the GAO bid protest regulations. *See* 4 C.F.R. § 21.2(a)(1) (1992) ("Protests based upon alleged improprieties in a solicitation which are apparent prior to bid opening or the time set for receipt of initial proposals shall be filed prior to bid opening or the time set for receipt of initial proposals."). While this Court declines to accept this regulation as controlling in all cases, the defendant persuasively demonstrates the utility of the GAO rule in the bid protest arena. *See Logicon, Inc. v. United States,* 22 Cl.Ct. 776, 789 (1991) (finding favor with the timeliness regulations of the GAO for bid protests). If an offeror recognizes an ambiguity or other problem in the solicitation, proper procedure dictates that the offeror challenge the problem before submission of an offer. If the offeror declines to challenge the problem, the reviewing tribunal may find that the offeror waived its right to protest. Here, although the plaintiff submitted a letter with its initial offer requesting evaluation of cancellation costs, the plaintiff nevertheless submitted an offer without using the available avenues of redress for objection to the provisions of the SFO. Further, the intervenor only challenged the preclusion of cancellation costs, service costs, and overtime charges from the evaluation criteria after the submission of revised BAFO's. In circumstances such as these, this Court finds application of the GAO rule fitting, based not on adoption of the regulation but on the wide discretion afforded the contracting officer to conduct negotiations pursuant to the terms of the SFO.

■ Even assuming arguendo the submission of a timely protest for the preclusion of cancellation costs and overtime charges, this Court still finds no error because the evaluation criteria of the instant SFO contain no reference to these costs. Section B, Clause 1 of the SFO states the "Award Evaluation Factors" as follows:

Evaluation of offers will be on the basis of the annual price per square foot, including any option periods.

FAA may request clarification of items and/or a "best and final offer" based on negotiations.

A. If annual CPI adjustments in operating expenses are included, the offeror must break out the offer to a "net" price per square foot for rental and a "base" price per square foot for services and utilities (Operating expenses) to be provided by the lessor. The net and base prices combined are the total "gross" annual per square foot price offered. If the offer included annual adjustments in operating expenses, the base price from which adjustments are made will be the base price for the term of the lease, including any option periods.

B. The Government will make present value price evaluation by reducing the prices offered to a composite annual square foot price, as follows:

(1) Parking and Wareyard area will be excluded from the total square footage, but not from the price. For different types of space, the gross annual per square foot price will be determined by dividing the total annual rental by the total square footage minus these areas.

(2) If annual adjustments in operating expenses will not be made, the gross annual per square foot price will be discounted annually at 8 percent to yield a gross present value cost (PVC) per square foot.

(3) If annual adjustments in operating expenses will be made, the annual per square foot price, minus the base cost of operating expenses, will be discounted annually at 8 percent to yield a net PVC per square foot. The operating expenses will be both escalated at 4 percent compounded annually and discounted annually at 8 percent, then added to the new PVC to yield the gross PVC.

(4) To the gross PVC will be added:

—The cost of Government provided services not included in the rental escalated at 4 percent compounded annually and discounted annually at 8 percent.

—The annualized (over the full term) per square foot cost of any items which are

to be reimbursed in a lump sun payment. (The cost of these items is present value; therefore, it will not be discounted.)

In addition to rental offering, the Government will also consider the cost to relocate, either within or from its present location at 3229 East Spring Street. This will include communication costs and equipment hook-up as well as those involved in a physical move.

C. The sum of the above will be the per square foot present value of the offer for price evaluation purposes.

SFO, § A, cl. 10(A–C), at 7–8. Thus, the SFO essentially contains a single evaluation method, per square foot present value, which contains a four-step analysis with the criteria of each, none of which makes explicit reference to cancellation costs (including improvement costs, termination costs, build out costs, or out-of-pocket expenses) or overtime charges. Nevertheless, separate from the requirements of the SFO, the protesting parties argue that the CICA requires consideration of the cancellation fee and overtime charges as evaluation criteria. Although the parties refer to no CICA citation for this requirement, this Court infers the parties' basis as the implied obligation to consider all offers fairly and honestly. Specifically, for cancellation costs, based on the contract interpretation doctrine to read a contract as a whole as well as the parol evidence doctrine of contemporaneous interpretation, the plaintiff and the intervenor request inclusion of these costs in the evaluation. For the first basis, the plaintiff contends that the Government seeks to apply only individual sections of the SFO and, by excluding certain provisions, ignore the requirements of the solicitation as a whole. However, the contracting officer's interpretation of the requirements for evaluation mirror the requirements of the evaluation clause: the contracting officer applies the clause as written while the protesting parties seek to apply the clause only to their benefit in gaining award. For the second basis, the plaintiff contends that the contracting officer initially (prior to the submission of revised BAFO's) suggested inclusion of cancellation costs within the evaluation criteria and, accordingly, seeks to hold

**360**

the Government to that interpretation. However, the evidence demonstrates that the contracting officer only sought consideration of these costs as for reasonableness and not for purposes of evaluation as within the evaluation criteria. While the evidence demonstrates some semantic errors (such as the distinction between evaluating cancellation costs within the evaluation criteria and evaluating the costs at all—that is, for reasonableness), this Court finds insufficient basis for error on the contracting officer's decision regarding cancellation costs. Similarly, as for overtime charges, neither the plaintiff nor the intervenor demonstrated any evidence to support inclusion of these costs either within the evaluation criteria or even within the SFO. Section G, clause 2 of the SFO only recites the contingency of such costs but never directs the contracting officer to evaluate or even consider overtime charges in the direction of award. Accordingly, this Court finds that the contracting officer conducted a proper evaluation with regard to cancellation costs and overtime charges.

 Furthermore, even assuming arguendo the submission of a timely protest for the alleged preclusion of service costs, this Court likewise finds no error in view of the contracting officer's express evaluation of such costs. The intervenor states that the contracting officer's worksheet for "Present Value Evaluation of Offers" contains no reference to the costs of services, but citing the worksheet, the defendant disagrees. The following is a copy of the actual worksheet used by the contracting officer:

PRESENT VALUE EVALUATION OF OFFERS

Term of Lease _6_

Net Rental _12.04_ sf Services _4.16_ sf Gross _16.20_ sf

1. Multiply the net rental by the discount factor from Table A which corresponds to the years in the lease:

_16.20 x 4.62 > 74.84_

2. Multiply the cost of services by the escalation and discount factor from Table C which corresponds to the years in the lease:

_4% CPI_

3. Add the present value costs calculated in #1 and #2. Divide by the number of years in the lease:

_74.84 ÷ 6 =_

The present value per square foot cost of this lease is: _12.47_ per year.

Defendant's Statement of Facts in Support of its Cross–Motion for Judgment on Plaintiff–Intervenor Satsuma Investment, Inc.'s Complaint, Attachment 1 (November 4, 1992). Because number two on the worksheet for Satsuma states "No CPI," the intervenor apparently believes that the contracting officer failed to consider service costs during the evaluation of the offers. To the contrary, as adduced at the hearing, the contracting officer added service costs (noted as $4.16 per square foot) to the initial net rental costs (noted as $12.04 per square foot) to derive a total net rental cost of $16.20 per square foot as stated in number one of the worksheet.

Only the computation for "the escalation and discount factor" maintains no computation because the intervenor had not requested an escalation factor in its BAFO. Indeed, if desired, the SFO specifically instructs the offerors to request a cost of living index adjustment: "The offer *must clearly state* whether the rental is firm throughout the term of the lease or if it is subject to annual adjustment of operating costs as indicated above." SFO, § C, cl. 2(E), at 14. (Emphasis added.) As the contracting officer noted, even if the intervenor were to prevail on this argument, the result would *increase* the amount of its offer: a result that the interve-

nor probably disfavors considering its net per square foot present value exceeds that of the anticipated awardee. Notably, the other offers contained adjustment requests and received a corresponding escalation in the net per square foot present value. In view of the foregoing, this Court finds no error in the contracting officer's manner of evaluation.

 Provided a contrary ruling on the method of evaluation, the plaintiff and the intervenor also protest an alleged failure by the contracting officer to even consider the noted costs for reasonableness. As cited above, section A, clause 4 of the SFO specifies an agreement on cancellation costs prior to award, section C, clause 2 of the SFO provides a formula for the calculation of operating costs, and section G, clause 2 signifies the possibility of overtime usage and charges. The protesting parties submit that the contracting officer failed to adhere to these provisions. To the contrary, at the hearing, the contracting officer explained that she had made determinations both for cancellation costs and service costs as to reasonableness. For overtime charges, pursuant to the provisions of the SFO, the contracting officer denied any requirement for a reasonableness or any other type of determination. Upon review of the relevant clauses, this Court agrees with the actions and conclusions of the contracting officer. Except for service costs, as noted above, none of the provisions recited by the protesting parties *require* that the contracting officer perform any additional appraisals other than a strict reasonableness determination; in fact, section G, clause 2 requires no consideration of price at all but merely signifies the possibility of overtime charges. Only the first clause presents reason for pause in that the clause requires agreement on price *before award*. On this matter, the contracting officer testified that she could only determine this amount after selection of the awardee because the amount depended on the square footage of the lease premises offered. In contrast to the specter of post-award negotiations as suggested by the protesting parties, however, the contracting officer explained that the determination of cancellation costs after award would simply reflect a cost calculation dependent on the amount of square footage and not a separate price negotiation. Assuming the contracting officer only engages in clarification of these cancellation costs with the intended awardee, and not the independent negotiation of costs separate from the revised BAFO submitted by the awardee, this Court again finds no error in the actions contemplated by the contracting officer.

 Finally, because at least the cancellation costs represent an indeterminate liability, the plaintiff further argues that the Anti–Deficiency Act (ADA) requires consideration of this and similar costs as current obligations. Citing *Navy Indus. Fund: Obligations in Connection with Long–Term Vessel Charters*, B–174839, 62 Comp. Gen. 143 (January 28, 1983), and *Stephen N. Shulman*, B–174839, 51 Comp.Gen. 598 (March 23, 1972), the plaintiff further proffers advisory opinions of the Comptroller General as authority for the establishment of cancellation or termination costs in renewable option contracts to determine the scope of Government liability. In the briefings, the intervenor joins in this argument. In the view of this Court, however, neither the plaintiff nor the intervenor presents authority contrary to the actions proposed by the contracting officer. The ADA specifies:

> An officer or employee of the United States Government or of the District of Columbia government may not—
>
> (A) make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation; or
>
> (B) involve either government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law.

31 U.S.C. § 1341(a)(1). In the instant case, the contracting officer did not violate these requirements. FAA Order 4420.5 (August 11, 1992) authorized the contracting officer to lease up to 25,000 square feet of office space for terms of twenty years, but as Congress only makes annual appropriations, the contracting officer followed an FAA practice of engaging a lease for one year, with additional one year options of up to nineteen additional option terms. Therefore, despite the use of

some unfortunately confusing language by the contracting officer,[6] as the SFO specifically recited the possibility of termination, and as the SFO required submission of the costs of termination by the offerors, the contracting officer therefore complied with the requirements of the ADA.

For the foregoing reasons, this Court finds no merit in the parties' objections to the manner by which the contracting officer reviewed either cancellation costs, service costs, or overtime charges for the procurement at issue.

### 2. Acceptance of Initial Proposal of One Airport Plaza

In its initial briefings, the plaintiff/intervenor developed the arguments disputing the acceptance of the initial proposal of One Airport Plaza. The intervenor disputes the acceptance of the initial proposal of the anticipated awardee because (a) One Airport Plaza received the solicitation after the date for common distribution of solicitations, (b) the proposal of One Airport Plaza allegedly comprised an unsolicited proposal, and (c) One Airport Plaza submitted its initial proposal late. In subsequent briefings, the plaintiff adopted the arguments relating to timeliness.

#### a. Distribution of Solicitations on Common Date

As the first reason to deny the offer of One Airport Plaza, the intervenor argues that the contracting officer improperly distributed an SFO to One Airport Plaza after the date for SFO distribution. Citing GSAR 570.203, 48 C.F.R. § 570.203 (1991), and FAA Order 4420.4 (August 11, 1983), the protesting parties contend that the appropriate regulations require that all offers disburse on a common date. The defendant responds not only that neither cited regulation precludes the distribution of SFO's after the common date for distribution but also that the GSAR provision cited contemplates the submission of SFO's after the common date. The inter-

venor bases its argument on a comparison of GSAR 570.203 with FAA Order 4420.4. GSAR 570.203 provides:

(a) The SFO is the basis for the entire lease negotiation process and must be made a part of the lease. SFO's must contain the information necessary to enable the prospective offeror to prepare a proposal. * * *

(b) The SFO must be released to all prospective offerors at the same time.

48 C.F.R. § 57.203(a)–(b). FAA Order 4420.4 contains a similar requirement as GSAR 570.203(b). This FAA Order provides: "b. Each solicitation for offers shall be released to all prospective offerors at the same time." FAA Order 4420.4(b). Based on these two provisions, the intervenor contends that the contracting officer must release all SFO's at the same time, even if a third party requests an SFO *after* the common date for distribution. The defendant correctly notes that the intervenor misapplies these GSAR and FAA requirements. The rationale of GSAR 570.203(b), as well as FAA *Order* 4420.4, serves to ensure that no offeror receives an SFO *before* the common date for distribution, not thereafter. Indeed, GSAR 570.203(c) even provides: "A reasonable number of extra copies of SFO's should be maintained at the issuing office in order to respond to individuals and firms['] requests for the SFO." 48 C.F.R. § 570.203(c). This provision demonstrates that the GSAR anticipates additional distribution *after* the common date. In short, contrary to the position proffered by the intervenor, neither GSAR 570.203 nor FAA Order 4420.4 requires the simultaneous distribution of SFO's. For these reasons, the contracting officer acted within her discretion regarding the issuance of an SFO to One Airport Plaza after the common date for SFO distribution.

#### b. Unsolicited Proposal

As for the second argument to deny the offer of One Airport Plaza, the intervenor

---

6. Apparently, when the plaintiff and the intervenor objected to the exclusion of cancellation costs from the evaluation criteria, instead of referring the parties to the evaluation criteria as recited in the SFO, the contracting officer made statements disclaiming any consideration of such costs based on the intention that FAA planned to extend the option contract throughout all the option periods. Despite this confusing and seemingly improper explanation, in practice, the contracting officer satisfied the base requirements of the SFO by considering these costs for reasonableness.

argues that the contracting officer improperly accepted an unsolicited proposal by One Airport Plaza. Citing FAR 15.502, 48 C.F.R. § 15.502 (1992), the intervenor contends that the proposal of One Airport Plaza contrasts with the exceptions for the acceptance of an "unsolicited proposal" as defined by that regulation. Citing the definition of an "unsolicited proposal," however, the defendant correctly counters the intervenor's argument. Indeed, FAR 15.501, 48 C.F.R. § 15.501 (1992), provides the following definition: *"Unsolicited proposal* means a written proposal that is submitted to an agency on the initiative of the submitter for the purpose of obtaining a contract with the Government and which is *not* in response to a formal or informal request (other than an agency request constituting a publicized general statement of needs)." (Emphasis added). As the definition demonstrates, the intervenor misunderstands the concept of an unsolicited proposal in Government procurement. *See Radioptics, Inc. v. United States,* 223 Ct.Cl. 594, 599 n. 1, 621 F.2d 1113, 1116 n. 1 (1980) ("There are two methods by which private companies obtain Government [contracts] * * * other than by competitive bidding. One is for the company or companies desiring support to submit 'unsolicited' proposals to the agency concerned. The other is for the Government to request submission of proposals."). Thus, if X Corporation submits a proposal for a warp drive widget in the absence of any consideration of such by the Government, FAR 15.502 indeed defines the policy for the approval of a contract based upon the "unsolicited proposal"; however, if Y Corporation submits a proposal for office space near the Long Beach Airport in view of an outstanding SFO for office space near that airport, the proposal of Y Corporation constitutes a solicited proposal, not an unsolicited proposal. Here, One Airport Plaza represents Y Corporation as it proffered a solicited, not an unsolicited, proposal. For these reasons,

even though unresponsive to the formal distribution of SFO's,[7] the contracting officer acted within her discretionary authority regarding the misnamed "unsolicited proposal" submitted by One Airport Plaza.

### c. Late Initial Proposal

■ As the third ground to deny the offer of One Airport Plaza, the intervenor (and as joined by the plaintiff) proposes that the contracting officer improperly accepted the anticipated awardee's late initial proposal. Indeed, although the SFO recited a deadline for the submission of initial proposals of November 30, 1992, and although the contracting officer had completed negotiations with all offerors and had established a BAFO deadline by January 6, 1993, the contracting officer nevertheless accepted the offer of One Airport Plaza submitted on January 13, 1993. Accordingly, because One Airport Plaza failed to submit its offer by the deadline for the submission of initial proposals, as set forth in the SFO, the plaintiff and the intervenor seek the exclusion of the offer submitted by One Airport Plaza from the solicitation. The defendant, citing GSAR 552.270–3(a), 48 C.F.R. § 552.270–3(a) (1992), simply responds that the contracting officer acted within her discretion.

In a letter, as disclosed to the parties and the Court only three days before the hearing, the contracting officer had initially agreed with one or more of the plaintiff's and intervenor's positions. Indeed, upon receipt of the "late" initial proposal of One Airport Plaza on January 13, 1993, the contracting officer rejected the proposal for reasons of timeliness, fairness, and adequate competition. The contracting officer explained:

> We have received your proposal to lease space to the FAA at One Airport Plaza. As you are aware, the original proposals were due by November 30, 1992, and negotiations have already taken place. Best

7. At the hearing, the defendant explained how One Airport Plaza submitted an offer without a copy of the SFO. As with many real estate lease procurements, real estate brokers frequently offer more than one property and, accordingly, only require a single SFO by which to find properties which appear to satisfy the requirements. In this case, although the real estate broker com-

pany (the Seeley Company) submitted the offer of One Airport Plaza after the deadline for the submission of initial proposals, because of the receivership status of the property, the broker had obtained one of the original SFOs on the common date for SFO distribution for the consideration of other properties.

and Final Offers have already been requested.

We will not consider your offer at this time because we already have adequate competition and it would not be fair to the other offerors to reopen negotiations since they are already preparing their best and final proposals. Also, your offer as submitted is not complete and would require a fair amount of time to even bring it close to where the other competitors are in the bid process. This requirement was advertised both in the Commerce Business Daily and the local newspapers and your company had an opportunity at that time to submit an offer; however, for other reasons, you did not submit it.

Letter from Patricia Jensen, Contracting Officer, Real Estate and Utilities Branch, FAA to Kevin Shannon, The Seeley Company (Real Estate Broker for One Airport Plaza) (January 22, 1993). When One Airport Plaza threatened to protest the exclusion, however, Ms. Jensen sought the advice of legal counsel at the FAA. Upon such advice, and pursuant to GSAR 552.270–3(a), she reversed her decision and accepted the proposal. As recited at GSAR 552.270–3, the SFO explicitly incorporated the contract clause, "Late Submission, Modifications, and Withdrawal of Offers." As adduced at the hearing, in the instant procurement, the FAA concluded that GSAR 552.270–3(a) allows the acceptance of proposals submitted after the deadline for initial proposals but before the deadline for BAFO's. The regulatory clause provides: "Any offer received at the office designated in the solicitation after the exact time specified for receipt of best and final offers will not be considered * * *." GSAR 552.270–3(a). As proffered by the defendant, the GSAR clause explicitly modifies the deadline for the submission of initial proposals from the date recited in the SFO to the initial date for the submission of BAFO's as established by the contracting officer. Thus, according to the testimony of the contracting officer, the deadline for the submission of initial proposals (established in the SFO as November 30, 1992) comprises no deadline at all but merely an "administrative due date." *See* transcript, at 48–51.

In the briefs as well as at the hearing, the plaintiff and the intervenor strenuously objected to the FAA interpretation of GSAR 552.270–3(a) for reasons of law, regulation, and fairness. First, the intervenor requests a finding that the FAA interpretation rendering the deadline for initial proposals as an "administrative due date" as contrary to law, specifically as contrary to the CICA. To demonstrate this contradiction, the intervenor explains that the CICA requires notice of the due date for initial proposals within the SFO. 41 U.S.C. § 253a(b) (1988). Pursuant to this requirement, the intervenor hypothesizes that the CICA requirement also entails a similar condition for adherence to the deadline for initial proposals. As the CICA specifies that the SFO establish both a place and time for the submission of offers, the intervenor argues that the FAA interpretation of GSAR 552.270–3(a) would render this CICA requirement meaningless. Thus, the intervenor suggests that GSAR 552.270–3(a) contradicts the requirements of law. Second, the intervenor also suggests the possibility of regulatory contradictions, alluding not only to the possibility of a deviation between the FAR and the the FAA interpretation of the GSAR clause but also contradictory GSAR provisions. As with the CICA requirement, because GSAR 570.203(a)(4) also specifies that the SFO establish both a place and time for the submission of offers, the intervenor also argues that the FAA interpretation of GSAR 552.270–3(a) would render GSAR 552.-203(a)(4) meaningless. As such, the intervenor insinuates that GSAR 552.270–3(a) contradicts other GSAR provisions. In addition, the intervenor also claims contradiction with the FAR. For example, GSAR 570.207 refers late offers to FAR 15.412, and FAR 15.412 provides: "Offerors are responsible for submitting offers, and any modifications to them, so as to reach the Government office designated in the solicitation on time." 48 C.F.R. § 15.412. As FAR 15.412 requires the submission of initial proposals by the SFO due date, and as the GSAR clause allows submission until the deadline for BAFO's, the intervenor suggests that GSAR 552.270–3(a) diverges from and thus violates the FAR. Third, the intervenor also submits arguments of fairness. Ironically, to demon-

strate such, the intervenor recites the same arguments as the contracting officer in her initial rejection, specifically the point that adequate competition existed and negotiations had concluded. The intervenor also pointed out how the SFO required that offerors agree to extend offers 120 days from the date for the submission of initial proposals. As such, the six offerors who adhered to the strict deadlines in the SFO made guarantees disparate from that of One Airport Plaza, who submitted a proposal well after the deadline for initial proposals and thus avoided any guarantee for the extension of the offer made. For these reasons, therefore, the intervenor challenges the FAA interpretation of GSAR 552.270–3(a).

In its briefings, the defendant provided little defense for its reliance on GSAR 552.-270–3(a). Although the defendant pointed to a decision of the Comptroller General which recited the clause, that GAO decision did not affirm the validity thereof. *See Aero Realty Co.*, B–250985, 93–1 CPD ¶ 191. At the oral hearing, however, when this Court questioned the defendant about its concerns regarding the validity of GSAR 552.270–3(a), the defendant provided another rationale for the clause. The defendant explained that the exigencies of the real estate market precipitate a highly fluid and volatile market, especially for lease properties. Because of these common circumstances, the GSAR clause allows a contracting officer the discretion to accept proposals even after the deadline for such, even until the deadline for BAFO's. As in the case at bar, the real estate market surrounding the Long Beach Airport had become much more marketable because of closures and relocations following the decline of the defense industry. Resultingly, the defendant contends that these exigencies allowed for the extraordinary application of GSAR 552.270–3(a), even if the clause diverges from the normal procedures as set forth in the FAR.

Upon review of the preceding arguments, and based on conflicts with the law and regulation as well as for reasons of fairness, this Court agrees with the positions recited by the plaintiff and the intervenor regarding GSAR 552.270–3(a).

■ As to the law, GSAR 552.270–3(a) contradicts the requirements of the CICA. At 41 U.S.C. § 253a(b)(2), the CICA specifies the provision of notice of the due date for initial proposals within the SFO. *See* 41 U.S.C. § 253a(b), (b)(2)(B)(ii) ("In addition to the specifications described in subsection (a) of this section, each solicitation for sealed bids or competitive proposals (other than for small purchases) shall at a minimum include—* * * the time and place for submission of proposals."). In conformity therewith, as recited at section A, clause 5 of the SFO, the specifications specifically establish a due date for initial offers: "Offers are due by November 30, 1992, and must remain valid for 120 days." SFO, § A, cl. 5, at 5. As this notice requirement reflects an explicit requirement of the CICA, the intervenor rationalizes that the CICA also requires strict adherence to any deadline for the submission of initial proposals as a condition precedent to a valid negotiated procurement. This Court finds such interpretation persuasive. As the intervenor points out, section 253a of the CICA contemplates a specific procedure for the operation of a negotiated procurement, initiated by an SFO and followed by submission of initial proposals, negotiations, BAFO's, evaluation, and award. *See generally* 41 U.S.C. § 253b. While the FAR recognizes many methods by which a contracting officer may amend this basic procedure, in light of the requisites of the FAR (as described below), this Court finds no legal basis for the exception of GSAR 552.-270–3(a) as to the timeliness requirements of the submission of initial proposals by the due date established in the SFO.

■ As for conflicts with the regulation, this Court finds the contracting officer's decision to allow the late submission of a proposal after the deadline for initial proposals as contrary to the FAR. As referenced above, and as incorporated by reference at GSAR 570.207, FAR 15.412 requires that offerors submit initial offers by the deadline for the initial proposals as established in the SFO. If an offeror submits an offer after this due date, the offer is late. GSAR 552.-270–3(a) specifically contradicts FAR 15.412 from requiring the submission of initial pro-

posals by the date established in the SFO to allowing submission of initial proposals by the date established by the contracting officer for BAFO's. Such a contradiction constitutes a deviation. While subpart 1.4 of the FAR, 48 C.F.R. §§ 1.400–05(1992), provides a means of authorized deviation from the FAR, the defendant presents no evidence of an authorized deviation for the GSAR clause at issue. *See, e.g., Akal Sec., Inc.,* B–244386, 91–2 CPD ¶ 336 (recognizing a class deviation for the contradiction of GSAR 52.223–43, regarding wage rate increases, with the FAR). Accordingly, absent an authorized deviation, FAR 1.302, 48 C.F.R. § 1.302 (1992), requires that agency regulations conform with the policies and procedures of the FAR. if an unauthorized deviation arises, the FAR, of course, controls. *See, e.g., IBI Sec. Serv., Inc.,* B–239569, 90–2 BCA ¶ 205 (finding GSAR 552.222–43 inconsistent with the FAR and the FAR controlling); *Lecher Constr. Co.,* B–224357, 86–2 BCA ¶ 369 (finding a VA clause inconsistent with the FAR and the FAR controlling). Here, as the contracting officer applied a regulation that deviates from the requirements of the FAR to allow the submission of a late initial offer by One Airport Plaza, this Court excludes that offer from the instant solicitation. Additionally, if an agency regulation improperly deviates from the FAR,[8] the agency regulation is invalid. *See Ace Servs., Inc. v. GSA,* GSBCA No. 11,331, 92–2 BCA ¶ 24,943 (finding GSAR 552.222–43 inconsistent with the FAR and thus invalid). Therefore, based on the unauthorized deviation from FAR 15.412 by GSAR 552.270–3(a), this Court deems GSAR 552.270–3(a) to be invalid.

As for fairness, this Court further holds that GSAR 552.270–3(a) violates this Court's understanding of the bona fides of the procurement system. As defined by the CICA, the federal procurement system requires full and open competition. 10 U.S.C. § 2301(b)(1). Concomitant with this competitive mandate, however, the CICA also requires that the Government exploit full and open competition under a veil of impartiality. *Magnavox Elec. Sys. Co. v. United States,* 26 Cl.Ct. 1373, 1378 (1992). This Court has often recited this impartiality requirement, pursuant to the FCIA, as the implied obligation of the Government to consider all bids and proposals fairly and honestly. *Bean Dredging Corp. v. United States,* 19 Cl.Ct. 561, 568 (1990). Under the factual circumstances here present, this Court finds that GSAR 552.270–3(a) allows an unfair result and a breach of this obligation. As described in the factual portion of this Opinion, six offerors had responded to the SFO by the deadline established for the submission of initial proposals. Subsequent to this deadline, negotiations occurred, and the contracting officer established the date for BAFO's. Seven days later, while awaiting the submission of BAFO's, another offeror sought to submit an offer. As an initial reaction, the contracting officer denied the offeror's proposal for reasons of untimeliness, fairness, and adequate competition. After discussions with FAA legal advisors, however, the contracting officer allowed submission of the untimely proposal based on GSAR 552.270–3(a). For the very reasons cited by the contracting officer in the initial rejection of the proposal, however, this Court finds the acceptance of the late offer as improper. As an analogy, in *S.H.E. Corp.,* B–205417.2, 82–2 CPD ¶ 298, the Comptroller General considered a similar situation where the Navy denied an offer submitted after the date for initial proposals but before the deadline for BAFO's. In response to the protestor's argument that the Navy should accept offers until the deadline for BAFO's, the Comptroller General explained: "Proposals submitted for the first time after the initial closing date generally may not be considered for award.

---

**8.** As a general rule, of course, a court defers to the interpretation of an agency. *Rust v. Sullivan,* 500 U.S. 173, 184, 111 S.Ct. 1759, 1768, 114 L.Ed.2d 233 (1991); *Pauley v. Bethenergy Mines Inc.,* 501 U.S. 680, 696–98, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). If a facial deviation occurs, however, this Court maintains authority not only to render a decision on the merits but also to consider the validity of the agency interpretation. *See McMaster Constr., Inc. v. United States,* 23 Cl.Ct. 679, 683 (1991) (declaring the authority of this Court to determine the validity of regulations contrary to or inconsistent with law or controlling regulation).

To permit consideration of such proposals would be unfair to those offerors which submitted timely proposals, and thus would tend to subvert the competitive system." *Id.* at 3 (citations omitted). The Comptroller General concluded: "The submission of best and final offers is the final step in the negotiation process and final offers will be accepted only from offerors which both submitted timely initial proposals and were found to be in the competitive range. Because [the protestor] did not submit an initial proposal * * * and thus was not in the competitive range, it was not eligible to submit a best and final offer." *Id.* at 4. The holdings of *S.H.E. Corp.* remain valid today. Therefore, by accepting the late proposal of One Airport Plaza, albeit in reliance on GSAR 552.270–3(a), the contracting officer breached the implied obligation to consider the proposals of the timely offerors fairly and honestly.

Therefore, finding clear and convincing evidence of agency action contrary to law and regulation as well as for reasons of fairness, this Court enjoins the award of the instant contract to the anticipated awardee. Thus, for the reasons stated above, this Court enjoins award to One Airport Plaza. Nevertheless, even assuming a contrary ruling in the above analysis, this Court finds further independent grounds for enjoining award to the anticipated awardee for the following reasons.

### 3. Acceptance of the BAFO of One Airport Plaza

As noted earlier in this Opinion, the protesting parties only discovered the defects and timeliness issues regarding the revised BAFO of One Airport Plaza when the defendant disclosed the diary of the contracting officer three days before the oral hearing. Accordingly, the only briefs that addressed these issues were the parties' post-trial briefs. In the Joint Post–Hearing Brief of the protesting parties, citing these documents as well as the admissions by the contracting officer at the hearing, the plaintiff and the intervenor requested that the Court require rejection of the defective and untimely revised BAFO of One Airport Plaza. The defendant rejects these arguments. As for the claims of defects, the defendant responds that the matters of dispute involved only minor informalities, but even if late, the defendant relies on GSAR 552.270–3(f) for acceptance of the BAFO submitted by One Airport Plaza.

A reiteration of the facts relevant to the submission of revised BAFO's illustrates these two issues. The contracting officer established February 25, 1993, as the due date for revised BAFO's and, in a letter to all offerors, disclosed this date. Although all the other offerors received letters reciting the February 25, 1993, date, One Airport Plaza apparently received written notification from the contracting officer stating the due date as February 26, 1993. Despite this apparent typographical error on the part of the Government, the contracting officer testified at the hearing that she had explicitly informed One Airport Plaza of the February 25, 1993, deadline. Indeed, on February 23, 1993, One Airport Plaza contacted the contracting officer requesting an extension of the BAFO due date, but the contracting officer refused the request, reiterating the deadline of 4:00 p.m. on February 25, 1993. Nevertheless, One Airport Plaza submitted an incomplete BAFO on February 26, 1993, once at 3:56 p.m. without signatures and another at 4:16 p.m. with signatures but without certifications and representations. Rejecting the 3:56 p.m. BAFO as defective without signatures, pursuant to GSAR 552.270–3(f), the contracting officer accepted the 4:16 p.m. BAFO despite the lack of certifications and representations. The contracting officer deemed this omission as a minor irregularity. Thus, according to the plaintiff and the intervenor, the contracting officer not only accepted a late revised BAFO but also accepted a defective revised BAFO. Moreover, when One Airport Plaza eventually submitted the certifications and representations on March 12, 1993, the plaintiff and the intervenor argue that the contracting officer once again accepted another late BAFO.

As for the defect issue, the defendant contends that the contracting officer properly accepted either the timely BAFO without signatures or the untimely BAFO without certifications and representations as

minor informalities, not defects. *See* FAR 14.405, 48 C.F.R. § 14.405 (1992) ("A minor informality or irregularity is one that is merely a matter of form and not of substance. * * * The contracting officer either shall give the bidder an opportunity to cure any deficiency resulting from a minor informality or irregularity in a bid or waive the deficiency, whichever is to the advantage of the Government"). As authority for the contracting officer's action, the defendant cites FAR 14.405. *See* 48 C.F.R. § 14.405(c) (deeming the signature of a bid as a minor informality if the bid documents contains other references indicating an intention to be bound by the unsigned bid).[9] Additionally, for the proposition that a signature represents a minor informality, the defendant also cites several opinions of the Comptroller General. *See, e.g. Wilton Corp.,* B–218064, 85–1 CPD ¶ 128; *Interstate Mfg. Co.,* B–166190, 48 Comp.Gen. 648 (March 25, 1969). Thus, the defendant submits that the contracting officer properly waived the signature requirement for One Airport Plaza. The defendant cites similar grounds for the absence of certifications and representations in the revised BAFO. *See, e.g., Roy Bennett,* B–219938, 85–2 CPD ¶ 692; *Jersey Maid Distribs. Inc.,* B–217307, 85–1 CPD ¶ 307; *JV Contractors,* B–250059, 92–2 CPD ¶ 439; *Neighborhood Dev. Corp.,* B–246166, 92–1 CPD ¶ 162; *Gracon Corp.,* B–224344, 86–2 CPD ¶ 41. On both counts, this Court notes that the Claims Court has rendered decisions in accord with the defendant's positions. *See DeMat Air, Inc. v. United States,* 2 Cl.Ct. 197, 202–06 (1983) (deeming the failure of a signature in a negotiated procurement as a minor informality or irregularity); *see also McMaster Constr., Inc. v. United States,* 23 Cl.Ct. 679, 684–85 (1991) (deeming the failure of submission of certifications and representations as curable until the time of execution of the contract).

Nevertheless, with regard to the lack of a signature on the revised BAFO of One Airport Plaza, this Court finds the defendant's proffer of a minor informality or irregularity as error. In the very cases cited by the defendant for classifying a signature as a

minor informality, the Comptroller General states that the general rule requires rejection of unsigned bids. As specified by the Comptroller General, pursuant to FAR 14.-405, the allowance of unsigned bids relies on an exception to the general rule which applies only when other documents indicate an intent to the bound. *See, e.g., Wilton Corp.,* B–218064, 85–1 CPD ¶ 128 (a signed amendment to the bid indicates an intent to be bound); *Sperry Corp.,* GSBCA Nos. 8208–P, 8210–P, 8266–P, 86–1 BCA ¶ 18,704 (a signed transmittal letter accompanying the bid indicates an intent to be bound). Here, the defendant presents no similar evidence. While the initial BAFO submitted on February 8, 1992, apparently contained a signature, no evidence demonstrates any document submitted contemporaneously or subsequent with the revised BAFO indicating an intent on the part of One Airport Plaza to be bound by the revised best and final offer. Accordingly, this Court finds the exception recited by the defendant as inapplicable. A ruling of this nature remains in complete accord with the application of the "intent to be bound" exception as defined in *Churchill Chem. Corp. v. United States,* 221 Ct.Cl. 284, 602 F.2d 358 (1979). There, the Court of Claims explained:

Plaintiff challenges the determination of the Board, as set forth above, on two bases. First, plaintiff stresses that the absence of a signature here is of no consequence since the contracting officer, in fact, knew the identity of the bidder. Although not specifically addressed by the Board, the evidence establishes that the contracting officer identified the bid to be that of Churchill Chemical Corporation only to the extent that their name appeared in a return address, stamped or printed on the transmitting envelope, and that the typewritten name of Grow Chemical Corporation, a parent of Churchill Chemical, appeared in the space for "affiliation information" in the bid. In conversations with plaintiff's personnel, after bid opening, the contracting officer was requested to treat the omission of a signa-

---

9. Although applicable to sealed bidding, FAR 15.-607, 48 C.F.R. § 15.607 (1992), refers consider-

ation of minor informalities or irregularities in negotiated procurements to FAR 14.405.

ture as a minor informality, as plaintiff now contends.

The mere fact that the prospective bidder's identity was ascertained does not serve to render the absence of a signature as a minor informality under the regulation. *Id.* at 292–93, 602 F.2d at 363. Notably, even the contracting officer admitted that the unsigned offer constituted a defect.[10] Therefore, irrespective of the submission of certifications and representations, in view of the failure to submit a signed revised BAFO as well as the failure to demonstrate evidence of an intent to be bound by such, this Court deems the BAFO submitted by One Airport Plaza at 3:56 p.m. on February 26, 1993, as deficient. Accordingly, the question turns to whether the contracting officer properly accepted the later BAFO submitted at 4:16 p.m., sixteen minutes after the deadline for revised BAFO's.

■ As for the lateness issue, the defendant contends that the contracting officer acted properly in view of GSAR 552.270–3(f). That GSAR provision states: "Notwithstanding paragraph (a) of this provision, a late modification of an otherwise successful offer that makes its terms more favorable to the Government will be considered at any time it is received and may be accepted." 48 C.F.R. § 552.270–3(f). Disparate from the findings of this Court regarding GSAR 552.270–3(a), where the GSAR provision creates results contrary to law and regulation, here this Court finds that the defendant entirely misinterprets GSAR 552.270–3(f). As referenced by the plaintiff and the intervenor in the joint post-hearing brief, the Comptroller General has differentiated the mere submittal of a BAFO (such as here) and the actual

"late modification of an otherwise successful offer that makes its terms more favorable to the Government" pursuant to GSAR 552.270–3(f): "This clause allows the government to accept more favorable terms only from an offeror that would be in line to receive the contract, prior to submission of the late offer; it does not permit acceptance of a late modification from a firm not already in line for award." *Schuerman Dev. Co.*, B–238464, 90–1 CPD ¶ 423, at 6 (citations omitted). In the case at bar, as no party stood in line for award before the submission of BAFO's, GSAR 552.270–3(f) remains wholly inapplicable as an offer cannot become "otherwise acceptable" absent timely submission. In other words, GSAR 552.270–3(f) pertains solely to modifications with terms more favorable to the Government made *after* the submission of BAFO's and *after* determination of the acceptable offers. Here, GSAR 552.270–3(f) cannot apply *before* the submission of BAFO's and *before* the determination of acceptable offers. Thus, as GSAR 552.270–3(f) remains inapplicable to the present case, FAR 15.412 controls. As the defendant presents no evidence for application of the exceptions noted at FAR 15.412(c), the late revised BAFO of One Airport Plaza may not be considered for award. 48 C.F.R. § 15.412(d). This Court thus determines again that One Airport Plaza must be excluded from the instant solicitation.

■ Even assuming arguendo that the Government applies a correct interpretation of GSAR 552.270–3(f), for reasons similar to this Court's finding as to GSAR 552.270–3(a), based on the compounding of error extant in the instant solicitation, this Court nevertheless finds the acceptance of the revised

---

10. With regard to the 3:56 p.m. submission of the revised BAFO, the following exchange occurred at the hearing:

Q * * * The unsigned document was not an acceptable offer because it wasn't signed, correct? * * *

\* \* \* \* \* \*

Q * * * Do you have any authority to say that you can accept an unsigned offer?

\* \* \* \* \* \*

A I think we're dealing here with can we accept it at 4:16 and that the offer came at 4:16 was signed.

Q Okay. Now, listen to me real careful and I'm not trying to argue with you. The unsigned one, that was not acceptable because that wasn't signed, correct?

A We cannot accept an unsigned offer.

Q So we've got to throw that one out. So now we're looking at the 4:16 one which was signed, correct?

A That's correct.

Transcript, at 151–52.

BAFO of One Airport Plaza by the contracting officer as improper.

As One Airport Plaza submitted documents to the contracting officer on four different occasions, this Court considers the propriety of each of these events in regard to arbitrary and capricious conduct. In the first instance, the contracting officer had established the due date for BAFO's as February 25, 1993. All of the offerors in fact received notice from the contracting officer of that due date, except for One Airport Plaza which, by apparent typographical error, received notice of the due date as February 26, 1993. Yet, when One Airport Plaza sought an extension of the BAFO date on February 23, 1993, the contracting officer explicitly informed the offeror of the deadline as February 25, 1993. Nonetheless, on February 26, 1993, at 3:56 p.m., One Airport Plaza submitted the first BAFO. In this regard, the defendant contends that the contracting officer properly allowed the one day late revised BAFO pursuant to the typographical error. In the second instance, One Airport Plaza not only submitted a revised BAFO more than twenty-three hours after the due date but also submitted an incomplete revised BAFO. As determined at the hearing, the contracting officer testified that the BAFO contained no signatures, yet the contracting officer accepted the BAFO. In this regard, the defendant contends that the contracting officer properly waived the signature requirement as a minor informality or irregularity. In the third instance, on February 26, 1993, at 4:16 p.m., One Airport Plaza attempted to cure the earlier BAFO with the late submission of a second BAFO with signatures. However, the contracting officer testified that this BAFO contained neither certifications nor representations. As noted by the plaintiff and the intervenor, the SFO specifically requires such submittals and that the preclusion of these documents renders any BAFO deficient. Indeed, the SFO states that "Offers shall include * * * Original completed and signed 'Representations and Certifications.'" SFO, § A, cl. 8, 8(c), at 5. In this regard, the defendant nevertheless contends that the contracting officer maintains discretion to defer the completion of certifications and representations

up until the time for award. In the fourth instance, even after the contracting officer discovered the apparent deficiencies in the revised BAFO, One Airport Plaza took until March 12, 1993, to submit the missing certifications and representations. Thus, while One Airport Plaza submitted the preceding BAFO twenty-four hours and sixteen minutes late, and the BAFO before that more than twenty-three hours late, the plaintiff and the intervenor claim that this submission constituted a BAFO late by over *seventeen* days. Again, the defendant states that the contracting officer acted within her discretion. For the four instances cited above, therefore, the defendant provides rationales for the contracting officer's decisions. While the defendant indeed provides explanations for the four instances cited above, nonetheless, this Court finds that the actions of the contracting officer, when considered as a whole, create an impression of unfairness and favoritism in the procurement process.

Although the defendant cites several persuasive arguments, at some point during the above successive waivers and deferrals of SFO requirements, the contracting officer here overstepped the boundaries of reasonableness. To the casual observer, the typographical error may seem insignificant alone, or the lack of a signature or the failure of certifications and representations may appear inconsequential, or the submission of a BAFO a mere sixteen minutes after the due date may appear nonprejudicial. However, in view of the number and scope of problems encountered by One Airport Plaza in submitting a proper revised BAFO, this Court finds that the plaintiff and the intervenor demonstrate a breach of the standard of arbitrary and capricious conduct by the contracting officer by clear and convincing evidence, specifically of the obligation to act in a rational and reasonable manner. Under the circumstances of the case at bar, if the contracting officer desired to expand the competitive field, then the proper course of action would have been resolicitation and not constant and repeated deferrals and waivers. Indeed, as in matters of conflict of interest, appearances are important in the procurement process. Similarly, in the facts of this case, the swing

and sway of the application of legal and regulatory exceptions for the benefit of a single offeror inspire (at the very least) a hint of impropriety.[11] Where such occurs to the dimensions as established here, this Court finds such actions unreasonable.

For all of the foregoing reasons, this Court finds that the FAA improperly accepted the late revised BAFO of One Airport Plaza and accordingly enjoins the consideration of that BAFO by the contracting officer in making award.

### CONCLUSION

For all of the above reasons, the Court grants the plaintiff's and plaintiff/intervenor's motion for summary judgment and denies the defendant's motion, as it pertains to the award of the contract. Because the Court finds that the FAA improperly considered late submissions of the anticipated awardee, One Airport Plaza, the Court hereby enjoins any award under this SFO (DTFA11–93–L–15001) to that entity.

Under the jurisprudential authority of the United States Court of Federal Claims, however, this Court may generally not specify which offeror should be awarded the contract. *CACI, Inc.-Fed. v. United States,* 719 F.2d 1567, 1575 (Fed.Cir.1983); *Orion Scientific Sys. v. United States,* 28 Fed.Cl. 669, 670 (1993). However, since it appears that there was adequate competition from some half a dozen offerors in this matter and considerable time and effort went into the negotiations on this SFO, the Court believes that it is fair and proper that the award should be made from among the existing offerors. *See Unified Indus., Inc. v. United States,* 24 Cl.Ct. 570, 575 (1991) ("[I]t is indisputable that the ultimate grant of a contract must be left to the discretion of a government agency; the courts will not make contracts for the parties.") (quoting *Scanwell Lab., Inc. v. Shaffer,* 424 F.2d 859, 869 (D.C.1970)). Therefore, the Court leaves the award decision up to the discretion of the contracting

officer to make the award pursuant to the requirements of the SFO from the existing offerors.

Further, and for the reasons already articulated herein, this Court declares GSAR 552.270–3(a) invalid and contrary to law and regulation.

Finally, the protective order issued on August 23, 1993, will remain in effect until the award is made in this contract matter, at which time the protective order is to be vacated without further order from this Court. The Court will also defer the decision on publishing this opinion until the award has been accomplished. The Government is charged with the responsibility of notifying the Court of the award date of the contract.

Costs to the plaintiff and the plaintiff/intervenor.

### ORDER ON STAY PENDING APPEAL

On February 9, 1994, this Court issued its decision in *Aerolease Long Beach v. United States,* 31 Fed.Cl. 342 (1994), and on February 17, 1994, the Clerk issued judgment. The decision of this Court allowed the contracting officer to make award of the contract at issue among the remaining offerors in Solicitation for Offers (SFO) DTFA 11–93–L–15001, inclusive of the plaintiff and the plaintiff/intervenor. On February 28, 1994, pursuant to Rule 62(c) of the United States Court of Federal Claims (RCFC), the plaintiff submitted a motion requesting a stay of award pending appeal to the United States Court of Appeals for the Federal Circuit. This Court hereby denies the plaintiff's motion to stay.

"[A] stay pending appeal is always an extraordinary remedy." *Golden Eagle Ref. Co. v. United States,* 4 Cl.Ct. 622, 624 (1984) (citing *Brotherhood of Ry. & S.S. Clerks, Freight Handlers, Express and Station Employees v. National Mediation Bd.,* 374 F.2d 269, 275 (D.C.Cir.1966)). As such,

---

11. Take, for example, the disparate application of FAR 14.405. Although the contracting officer had previously deemed the lack of certifications and representations as a defect with regard to the initial BAFO of the intervenor, in the case of the anticipated awardee, the contracting officer deemed the subsequent submission of certifications and representations as a minor irregularity. A single example of many, the contracting officer repeatedly applied disparate standards for the review of these offers, almost always to the favor of One Airport Plaza.

this Court's predecessor, the United States Court of Claims, recognized four factors to consider in any motion to stay pending appeal under Rule 62(c): (1) a strong likelihood that the movant will prevail on the merits of the appeal; (2) irreparable injury to the movant unless the stay is granted; (3) no substantial harm to the other parties if the stay is granted; and (4) consideration of the public interest. *Id.* 4 Cl.Ct. at 623; *ATL, Inc. v. United States*, 4 Cl.Ct. 374, 391 (1984), *aff'd in part and rev'd in part*, 736 F.2d 677 (Fed.Cir.1984). *See, e.g., E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed.Cir.1987) (setting forth the four factors of consideration for a stay of an injunction pending appeal). *See generally* 11 CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2904, at 316 (1973) (hereinafter WRIGHT & MILLER). Essentially, this analysis mirrors the consideration for a temporary restraining order under RCFC 65. *Magellan Corp. v. United States*, 27 Fed.Cl. 446, 447 (1993). This Court applies these factors to the instant motion seriatim.

 First, the plaintiff claims a likelihood of success on the merits of the appeal.[1] The plaintiff seeks appeal on the single issue of whether or not the SFO required the contracting officer to consider termination costs as an evaluation criterion. Even though the evaluation criteria of the SFO describe no such requirement, the plaintiff argues that the Anti–Deficiency Act (ADA), 31 U.S.C. § 1341 (1988), prohibits the exclusion of such costs from consideration as eval-

uation criteria, as opposed to consideration for reasonableness.[2] Further, the plaintiff cites two advisory opinions of the Comptroller General of the General Accounting Office which, the plaintiff submits, supports its position. For the reasons outlined in this Court's February 9, 1994, decision, however, this Court found that the contracting officer had acted properly by simply considering the amount of termination costs for reasonableness. As an extraordinary remedy, a stay pending appeal requires more than base suppositions of disapproval from a party dissatisfied with the holding of a judicial tribunal. Especially in view of the wide discretion normally accorded the contracting officer in the evaluation of offers, and in the absence of any language in the SFO requiring the consideration of termination costs within the evaluation criteria, this Court finds absolutely no likelihood of success on the merits of the plaintiff's appeal.

 Second, the plaintiff claims irreparable injury if this Court fails to grant the requested stay. To evidence such, the plaintiff proffers three bases of injury. First, the plaintiff states that the remaining offerors under the contract submitted offers with the understanding that the contracting officer would consider termination costs as within the evaluation criteria. Misinterpretation of the terms of a solicitation, however, constitutes not an irreparable injury but a basis for a claim. Indeed, this Court considered and disposed of these arguments in the declaratory and injunctive relief phase of this case.

---

1. The first factor for issuance of a stay pending appeal requires a "strong" likelihood of success on the merits on appeal. *Isratex, Inc. v. United States*, 25 Cl.Ct. 223, 227 (1992); *Logicon, Inc. v. United States*, 22 Cl.Ct. 776, 783 (1991); *Quality Transport Servs., Inc. v. United States*, 12 Cl.Ct. 276, 281 (1987); *Olympia USA, Inc. v. United States*, 6 Cl.Ct. 550, 557 (1984); *DLM & A v. United States*, 6 Cl.Ct. 329, 331 (1984). Yet, if the movant for the stay demonstrates sufficient harm, a court need not find "strong" likelihood but only a likelihood of success on the merits. *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512–13 (Fed.Cir.1990). Here, the plaintiff presents no evidence of sufficient harm to avoid the more onerous burden for the first factor. Yet, even assuming such, the plaintiff also presents no likelihood of success on the merits.

2. The plaintiff not only seeks appeal on the Anti–Deficiency Act issue but recites the absence of "a definitive ruling on the possible violation of the Anti–Deficiency Act * * *." Plaintiff's Memorandum of Points and Authorities in Support of Motion for Order Granting Injunction During Pendency of Appeal, at 4. This Court quite definitively ruled on that very matter, however. On page 362 of the Court's February 9, 1994, decision, this Court recited the plaintiff's ADA argument and found the plaintiff's position unpersuasive. Specifically, this Court ruled that the Government recited authority for the contracting officer's actions regarding the consideration of termination costs under the terms of the SFO and in conformity with the requirements of the ADA.

Second, the plaintiff claims that the SFO contains no termination for convenience clause and that the Government maintains no authority to terminate the contract should the appellate court find impropriety. However, the most basic tenet of federal procurement law states that all Government contracts by implication contain all required contract terms. *G.L. Christian & Assocs. v. United States,* 160 Ct.Cl. 1, 312 F.2d 418, *reh'g denied,* 160 Ct.Cl. 58, 320 F.2d 345, *cert. denied,* 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963). Even if the contract contained no termination for convenience clause, the *Christian* doctrine would incorporate such a clause by operation of law. *General Eng'g & Mach. Works v. O'Keefe,* 991 F.2d 775, 779 (Fed.Cir.1993). Finally, for a third claim of irreparable injury, the plaintiff contends that if the FAA awards the contract to another offeror then the injury to the plaintiff would involve loss of the contract. In this third assertion of injury, the plaintiff presents the most sustainable argument. Indeed, loss of the opportunity to complete for or obtain a Government contract generally constitutes irreparable injury. *Magnavox Elec. Sys. Co. v. United States,* 26 Cl.Ct. 1373, 1379 (1992); *TRW Envtl. Safety Sys., Inc. v. United States,* 16 Cl.Ct. 520, 529 (1989). Here, however, the plaintiff *had* such an opportunity. In the instant procurement, the contracting officer requested initial offers, initial best and final offers (BAFO's), and final BAFO's, and the plaintiff responded to each request. Thus, it seems that the plaintiff proffers not loss of the opportunity to compete, but loss of the opportunity to win the contract, as the basis of irreparable harm. The plaintiff cites no authority for such an obligation. The plaintiff apparently confuses the reasons for an injunction involving the opportunity to compete, considered in the four factor analysis for a temporary restraining order pending judicial review, and the reasons for an injunction pending appeal, considering the same four factors but for different reasons. Therefore, despite the plaintiff's assertions, this Court finds no recitation of an irreparable injury to the plaintiff upon denial of the instant stay.

Third, the plaintiff rejects any harm to the other interested parties if the Court grants the requested stay. As for the other offeror, the plaintiff cites no harm to the plaintiff/intervenor by the maintenance of the status quo. *See Fundicao Tupy S.A. v. United States,* 12 C.I.T. 813, 696 F.Supp. 1525, 1529 (1988) ("An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant.") (quoting *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843–44 (D.C.Cir.1977)). Again, however, the plaintiff fails to support this position. Indeed, the plaintiff apparently only seeks the instant stay because the plaintiff/intervenor received a lower net per square foot present value rating by the contracting officer in the evaluation of final BAFO's. However, the plaintiff's argument maintains a false premise because, although the decision of this Court directed award to one of the remaining offerors, this Court in no way required the contracting officer to award the contract to any certain contractor. Indeed, the contracting officer retains the authority to award the contract based on the final BAFO's or to require the submission of new BAFO's in light of the Court's decision. Whatever the outcome, the contracting officer retains full discretion on award. Nevertheless, the plaintiff seemingly believes that the FAA intends to award the contract to the plaintiff/intervenor. If so, then a stay of award would in fact substantially harm other interested parties, not only the plaintiff/intervenor but also the Government. In fact, the plaintiff makes no mention of the interests of the Government in the request for the instant stay. Already, the Government has delayed award for nine months with anticipation of at least several more months' delay until final award. With this Court's February 9, 1994, decision, the FAA apparently remains poised for making a timely decision, and further delay by the granting of a stay would further encumber this process. Thus, the Government faces substantial harm by a stay as well. Of course, if the FAA decides to award the contract to the plaintiff, then the reasons for the instant stay become moot. Whatever the result of award, therefore, the plaintiff

presents inadequate evidence that the granting of the instant stay would result in no substantial harm to the other interested parties.

Fourth, the plaintiff submits that granting the instant stay would beget no harm to the public interest. Because the issue on appeal allegedly involves a matter of great interest to the federal procurement system, the plaintiff further argues that the public interest favors the stay of award pending resolution of the issue in dispute. However, for the reasons recited in the February 9, 1994, decision as well as for the reasons noted herein, this Court finds no factual or legal basis in the plaintiff's position. To the contrary, if the public interest rises at all in the instant case, the public interest favors the efficient and speedy resolution of this matter and the conclusion of the repetitious administrative and judicial invocation. Furthermore, it is recognized by this Court that any delay in the award of the instant contract directly benefits the plaintiff. As the incumbent contractor, the longer the litigation persists in the instant matter, the longer the plaintiff retains the FAA as a lessee. *Cf.* WRIGHT & MILLER, at 321 ("There is, of course, a considerable reluctance in granting an injunction pending appeal when to do so, in effect, is to give the appellant the ultimate relief he is seeking."). Already the Government has extended the lease from June 16, 1993, to June 16, 1994, and a stay of award would almost certainly result in another extension of the lease term with the plaintiff. Therefore, if the public interest favors one course over another, it favors the timely award of the instant contract and the conclusion of these preaward challenges to the decisions of the contracting officer, regardless of whether they constitute good faith claims of legal dispute or attempts at delay.

For the foregoing reasons, and upon consideration of the four factors for determining whether to grant a stay pending appeal, this Court finds that the plaintiff makes an inadequate showing for this extraordinary remedy. On the one hand, if the plaintiff demonstrates a strong likelihood of success on the merits of the appeal, or if the last three factors of the four factors weigh heavily in the plaintiff's favor, a court may grant a stay pending appeal. *Golden Eagle Ref.,* 4 Cl.Ct. at 624. On the other hand, judicial consideration of the factors for a stay pending appeal need not follow any definite structure. *Standard Havens Prods.,* 897 F.2d at 512. Thus, while a court may base a finding on one or more factors, neither factor controls entirely: "These factors, taken individually, are not dispositive; rather, the [trial] court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." *Hybritech Inc. v. Abbott Lab.,* 849 F.2d 1446, 1451 (Fed.Cir.1988). Yet, whatever the analysis, where a movant establishes none of the factors for a stay pending appeal, and where a movant proffers no factual or legal basis for success on the appeal, denial of the motion for a stay pending appeal is not only proper but mandatory. *Quality Transport Servs., Inc. v. United States,* 12 Cl.Ct. 276, 286 (1987).

Therefore, whether this Court applies a literal factor-by-factor analysis or a general application analysis, the plaintiff presents no basis for a stay pending appeal. For the forgoing reasons, this Court denies the plaintiff's motion for a stay of award pending appeal. As with the February 9, 1994, decision, this Order is issued under the protective order issued on August 23, 1993, and will remain in effect until the award of the contract, at which time the protective order is to be vacated without further order. Upon the publication of the unredacted version of the February 9, 1994, decision, this order will be attached thereto.

IT IS SO ORDERED.

## ORDER ON RECONSIDERATION

On February 9, 1994, this Court issued its decision in *Aerolease Long Beach v. United States,* 31 Fed.Cl. 342 (1994), and on February 17, 1994, the Clerk issued judgment. On February 22, 1994, the defendant submitted a motion for partial reconsideration. Therein, the defendant requested reconsideration of the Court's finding of General Services Administration Regulation (GSAR) 552.270–3(a), 48 C.F.R. § 552.270–3(a) (1992), as invalid. Finding no basis for reconsideration,

and pursuant to Rule 59 of the United States Court of Federal Claims (RCFC), this Court denies the defendant's motion without further briefing.

The defendant's motion for reconsideration accurately recites the three reasons for this Court's finding regarding GSAR 552.270–3(a): first, this Court deemed GSAR 552.270–3(a) as contrary to law, as violative of the Competition in Contracting Act of 1984 (CICA), Pub.L. No. 98–369, 98 Stat. 1175 (codified in part at 10 U.S.C. § 2304 (1988 & Supp. III 1991)); second, this Court found GSAR 552.270–3(a) as conflicting with controlling regulation, as an unauthorized deviation from the Federal Acquisition Regulation (FAR); third, this Court held that GSAR 552.270–3(a) breached the implied obligation of the Government to consider all bids and proposals fairly and honestly. In the motion for reconsideration, however, the defendant only directly challenges the first two of these three grounds for the finding of invalidity. For that omission alone, this Court finds the motion deficient for the purposes proffered. Furthermore, for the arguments presented regarding the first two reasons for the invalidity finding, the defendant either reiterates positions already made to the Court or presents legal positions with facially invalid legal premises.

▇▇▇ To rebut the finding of GSAR 552.270–3(a) as contrary to law, the defendant argues that the Court's ruling would inhibit the maximization of competition under the CICA. This argument mirrors the defendant's statements both in the briefings as well as at the oral hearing. The United States Court of Federal Claims, and its predecessor courts, have advised against this practice:

> It is well recognized that "[a] motion for reconsideration is addressed to the discretion of the trial court." *Triax Co. v. United States*, 20 Cl.Ct. 507, 509 (1990) (citing *Eyre v. McDonough Power Equip.*, 755 F.2d 416, 420 (5th Cir.1985) (construing FRCP 59)); *see Yuba Natural Resources, Inc. v. United States*, 904 F.2d 1577, 1583 (Fed.Cir.1990); *Gelco Builders & Burjay Constr. Corp. v. United States*, 177 Ct.Cl.

1025, 1036 n. 7, 369 F.2d 992, 1000 n. 7 (1966). Post-opinion motions to reconsider are not favored, [*McDonald v. United States*, 13 Cl.Ct. 255, 264 (1987), especially "where a party has had a fair opportunity to * * * litigate the point in issue." *Prestex, Inc. v. United States*, 4 Cl.Ct. 317, 318 *aff'd*, 746 F.2d 1489 (Fed.Cir.1984) (citing] *General Elec. Co. v. United States*, 189 Ct. Cl. 116, 117–118, 416 F.2d 1320, 1321 (1969)). It is well settled that "the court has a right to know before it decides [the controversy at hand] whether the parties have anything further to present." *General Elec. Co.*, 189 Ct.Cl. at 118, 416 F.2d at 1322.

Generally, "[a] motion under RUSCC 59 must be based upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court." *Circle K Corp. v. United States*, 23 Cl.Ct. 659, 664 (1991). The movant must show either that an intervening change in the controlling law has occurred, evidence not previously available has become available, or that the motion is necessary to prevent manifest injustice. *Weyerhaeuser Corp. v. Koppers Co.*, 771 F.Supp. 1406, 1419 (D.Md.1991). "Litigants should not, on a motion for reconsideration, be permitted to attempt an extensive retrial based on evidence which was manifestly available at [the] time of the hearing." *Gelco*, 177 Ct.Cl. at 1036–37 n. 7, 369 F.2d at 1000 n. 7. The litigation process rests on the assumption that both parties present their case once, to their best advantage.

*Bishop v. United States*, 26 Cl.Ct. 281, 285–86 (1992). *See also Mega Constr. Co. v. United States*, 29 Fed.Cl. 396, 404–05 (1993) (reciting the *Bishop v. United States* position on motions for reconsideration). Because the defendant presents no new facts or law on this issue, and as this Court's forty-page February 9, 1994, decision adequately addressed these same arguments, this Court will not revisit any matter addressed in the Opinion of the Court.

▇▇▇ To rebut the finding of GSAR 552.270–3(a) as contrary to controlling regulation, specifically the FAR, the defendant

presents a single argument unique from that presented either in the briefings or at the hearing. Citing the Office of Federal Procurement Policy Act of 1974 (OFPPA), Pub.L. No. 93–400, 88 Stat. 796 (codified at 41 U.S.C. §§ 401–09 (1988)), the defendant contends that the procurement policies defined in the FAR by the Office of Federal Procurement Policy (OFPP) exclude application to leases. The OFPPA provides that "[t]he Administrator shall provide overall direction of procurement policy" and that "the Administrator may prescribe Government-wide procurement policies * * * [which] shall be implemented in a single Government-wide procurement regulation and shall be followed by executive agencies in the procurement of—(1) property other than real property in being * * *." 41 U.S.C. § 405(a) (1988). Claiming that a lease constitutes "real property in being," the defendant contends that this Court acted in error by finding GSAR 552.270–3(a) contrary to the FAR. The defendant also provided citations to the legislative history of the OFPPA which specifically recites the exclusion of "leases * * * in existing buildings and land * * *." S.Rep. No. 93–692, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 4589, 4599; H.R. No. 1176, 93d Cong., 2d Sess. 13 (1974). The defendant further relies on the definition of "acquisition" in the FAR, which regards only "supplies or services" and not interests in real property. FAR 1.103, 48 C.F.R. § 1.103 (1992). Based on these reasons, the defendant concludes: "Since a lease is an interest in land, it is specifically excluded from the coverage of the FAR * * *." Defendant's Motion for Partial Reconsideration, at 6–7.

Absent specific findings on this matter, the above argument could inspire debate over the application of the FAR to the acquisition of property by the Government of a leasehold interest. However, on this very point, the United States Court of Appeals for the Federal Circuit has already ruled. In *Forman v. United States*, 767 F.2d 875, 878 (Fed.Cir. 1985), the Federal Circuit considered the application of the Contract Disputes Act to leases in defining the jurisdiction of the boards of contract appeals. As the court recognized, at 41 U.S.C. § 602(a) (1988), the

CDA extends jurisdiction "to any express or implied contract * * * *other than real property in being*." (Emphasis added.) Citing the OFPPA as an analogy, the Government argued that a lease constitutes "real property in being" and, accordingly, that the CDA precluded application to leases. The Federal Circuit, however, expressly rejected this interpretation with regard to *both* the CDA and the OFPPA:

> The legislative history of the [Office of Federal Procurement] Policy Act is more informative in this regard than the history of the Disputes Act. The Senate Report accompanying the bill which became the Policy Act states:
>
>> Procurement under [§ 6(a) ] covers property ... and construction, alteration, repair or maintenance of buildings and other forms of real property, but excludes real property in being. Accordingly, the acquisition of a fee, easements, leases, or other interests in existing buildings and land would not be subject to the policies and regulations promulgated by OFPP.
>
> S.Rep. No. 93–692, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 4589, 4599. This comment does not support the Government's case. "Acquisition of" a lease is not the same thing as "entering into" a lease. The Report's language apparently refers to the procurement of existing interests—fees, easements, leases, etc.—and not the initial creation of these interests. A leasehold does not exist until a lease is entered into, and by entering into a lease the Government does not acquire a pre-existing interest in the land; it establishes a new one. Thus, the Policy Act's language excluding contracts to procure "real property in being" fails to apply to newly-created lease agreements, and they fall with the purview of that statute and of the corresponding provisions of the Contract Disputes Act. This comports with Congressman Kindness' comments, since the Government can acquire a leasehold interest held by another through eminent domain, but, as

mentioned *supra*, it creates a leasehold for itself by agreement.

*Forman*, 767 F.2d at 878–79. In addition, the court not only limited application of the CDA and OFPPA to "existing leasehold interests" but also rejected the characterization of a leasehold as "real property in being" entirely. The court established: "If we were to put legislative history (both of the Policy Act and of the Contract Disputes Act) wholly aside, we would reach the same conclusion from the bare terms of the statutes because leases are normally considered within the realm of contracts (*see Keydata Corp. v. United States*, 205 Ct.Cl. 467, 504 F.2d 1115, 1123 (1974)) and also as personal (rather than real) property. 51C C.J.S., *Landlord & Tenant*, § 26 at 62–63." *Id.* 767 F.2d at 879 n. 4. In light of the above ruling, therefore, this Court finds absolutely no basis in law for the "new" argument presented by the defendant upon the motion for reconsideration.[1]

To rebut the finding of GSAR 552.270–3(a) as contrary to basic fairness, by breach of the implied obligation of the Government to consider all bids and proposals fairly and honestly, the defendant provides no argument of refutation. Instead, the defendant merely objects to a case recited by the Court in the fairness analysis regarding GSAR 552.270–3(a). Specifically, the defendant criticizes this Court's reliance on *S.H.E. Corp.*, B–205417.2, 82–2 CPD ¶ 298, because that case applied the FAR to the procurement at issue in the case. As the defendant mistakenly believes the FAR inapplicable to leases, the defendant cites any analogy to the holding of that case as error.

■ In the analysis of GSAR 552.270–3(a) generally, the defendant also criticizes the Court for inconsistency. In the Febru-

ary 9, 1994, opinion, the Court recognized the advantage of requiring an offeror to challenge an ambiguity or other problem in the solicitation before the submission of offers. Otherwise, this Court noted, a reviewing tribunal could find that the offeror had waived any challenge to the terms of the solicitation by the submission of an offer. Indeed, with regard to the issue of termination costs, service costs, and overtime charges, this Court found that the plaintiff and the plaintiff/intervenor had waived any objection to the contents or nomenclature of the evaluation criteria for reasons of untimeliness. While this conclusion evidently constitutes a form of presumption, this Court made neither reference nor inference of such as an irrebuttable presumption. In fact, the Court cited the General Accounting Office bid protest regulations as an analogy for application. *See* FAR 21.2(a)(1), 4 C.F.R. § 21.2(a)(1) (1993) ("Protests based upon alleged improprieties in a solicitation which are apparent prior to bid opening or at the time set for receipt of initial proposals shall be filed prior to bid opening or at the time set for receipt of initial proposals."). Even those regulations maintain a methodology for protests apparent only after the time for bid opening or *after* the submission of initial proposals. *See id.* § 21.2(a)(2) ("In cases other than those covered in paragraph (a)(1) of this section, protests shall be filed no later than 10 days after the basis of protest is known or should have been known, whichever is earlier."). On a more basic level, moreover, neither a legal presumption nor GAO regulation precludes judicial review of an illegal or even an unreasonable regulation. *Essex Electro Eng'rs, Inc. v. United States*, 960 F.2d 1576, 1580 (Fed.Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992).

---

1. It is perhaps fitting to remind the defendant of its obligation to apprise a judicial tribunal of case law both supportive *and detrimental* of a position proffered for consideration (or in this case, reconsideration). In apparent recognition of this obligation, the defendant submitted a copy of the recent decision in *GBA Assocs. v. United States*, No. 93–1442–A (E.D.Va. February 23, 1994). Therein, the United States District Court for the Eastern District of Virginia also considered a challenge to the validity of GSAR 552.-270–3(a). Yet, different from this Court, the district court in *GBA Assocs.* found the application

of GSAR 552.270–3(a) within the discretion of the agency to interpret its own regulations. The defendant thus proffers this case as additional grounds for this Court to reconsider its finding regarding the validity of the GSAR provision. Notably, however, the district court made no determination of the GSAR provision in regard to any conflict with the CICA, deviation from the FAR, or violation of the implied obligation of the Government to consider all bids and proposals fairly and honestly. In the absence of such analysis, this Court finds *GBA Assocs.* unpersuasive.

Therefore, this Court finds no inconsistency in its validity finding regarding GSAR 552.-270–3(a).

Based on the foregoing, finding an absence of any grounds for the reconsideration of this Court's ruling regarding GSAR 552.270–3(a), this Court denies the defendant's motion for partial reconsideration. As with the February 9, 1994, decision, this Order is issued under the protective order issued on August 23, 1993, and will remain in effect until the award of the contract, at which time the protective order is to be vacated without further order. Upon the publication of the unredacted version of the February 9, 1994, decision, this order will be attached thereto.

IT IS SO ORDERED.